**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-20552**

---

**LANA RYAN DAVIS and LORI DAVIS,**

**Plaintiffs-Appellants,**

**VERSUS**

**BOBBIE G. BAYLESS, BAYLESS & STOKES**
**and BURTA RHODES RABORN,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

November 22, 1995

BEFORE LAY[1], DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiffs Lana and Lori Davis appeal from rule 12(b)(6) dismissal of their complaint alleging claims for damages under federal and state law and seeking preliminary injunctive relief. Review of rule 12(b)(6) dismissal is *de novo* and dismissal should not be affirmed unless it appears that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. **Blackburn v. City of Marshall**, 42 F.3d 925, 931 (5th Cir. 1995). For purposes of review, plaintiffs' factual allegations must be accepted as true. **Id**.

---

[1] Circuit Judge of the Eighth Circuit, sitting by designation.

## RELEVANT FACTS

Defendant Burta Rhodes Raborn is a court appointed receiver over the non-exempt assets of Dr. Gerald Johnson and his estranged wife June. Dr. Johnson is the judgment-debtor on an $11,360,000 malpractice judgment entered by the 133rd Judicial District Court of Harris County, Texas in 1982. Defendant Bobbie G. Bayless is counsel for Mr. and Mrs. Earl Newsome, the judgment-creditors in the malpractice action. Bayless & Stokes is the law firm in which Ms. Bayless is a partner. Plaintiff Lana Ryan Davis is employed by and romantically involved with Dr. Johnson. At all times relevant to this suit, Dr. Johnson, who is separated from his wife, was staying with Lana Davis in her Houston home. Plaintiff Lori Davis is Lana Davis' daughter. She shared the residence with Lana Davis and Johnson.

Attempts to satisfy the Newsome judgment have been repeatedly frustrated. For example, Raborn's receivership was abated in 1986 when a settlement was reached, but had to be reinstated in May 1993 after Johnson breached the settlement agreement. Satisfaction was also interrupted by Johnson's bankruptcy. In denying Johnson a discharge, the bankruptcy judge pointedly commented on Johnson's "nefarious machinations" to avoid payment of the Newsome judgment, characterizing Johnson's "fanciful account" of failed investments with "imaginary friends" as being indicative of fraud, perjury and forgery.

On July 14, 1993, Bayless met Johnson at the Davis home to search for assets that could be applied to the Newsome judgment. Johnson consented to a limited search for his assets. The facts alleged by Davis, which must be accepted as true, suggest that Johnson's consent

2

was invalid.[2]  During the search both Lana Davis and her daughter Lori Davis returned home and were distressed to find Bayless in the home. Davis alleges that Bayless rifled her underwear drawer, read her personal mail and refused to leave.  Davis also claims that Bayless eventually left with several pair of Lana Davis' underwear.  Defendants Raborn, Bayless and Bayless & Stokes respond that Bayless' search of Johnson's residence was an attempt to satisfy the Newsome judgment and was authorized by the state court's order appointing Raborn receiver, which allowed the receiver to take possession of Johnson's non-exempt property and required Johnson to cooperate by providing access to places where such property might be located.

In November 1993, pursuant to a turnover petition, the state court authorized the receiver to take possession of the contents of storage facilities held in the name of Dr. Johnson or other named persons associated with him, including Lana Davis and her children.  The November order also instructed named storage facilities to turn over documentation that would allow the receiver to determine whether Johnson had an interest in the contents of the storage rooms at those facilities.  In December 1993, the court issued a supplemental order specifically identifying a particular storage unit leased to Davis' adult daughter, Carrie Goff.  Pursuant to those orders Raborn and Bayless thereafter searched the Goff storage unit and seized several items of value, including $5,600 cash, several items of jewelry which

---

[2]  Davis alleges (1) that Bayless attempted to obtain her consent by phone "through Johnson" and that she refused; (2) that Bayless then coerced Johnson's consent to search by threatening to have Raborn (as receiver) terminate Davis' employment with Johnson; (3) that Bayless' search extended beyond the authorization given and continued after consent was withdrawn; and (4) that Johnson lacked authority to consent.

Davis claims belonged to her mother and grandmother, and an oil painting. The Davises are not party to the state court receivership action and received no notice that an order allowing search of their property had been issued. Defendants acknowledge that the property is being held by the receiver, but allege that it is clearly identifiable as Johnson's from documents in the Johnson divorce proceeding. In an order dated December 7, 1993, the state court also authorized Raborn or her agent to take possession of the contents of safe deposit boxes held by Johnson or other named individuals, including Davis and her children. No search or seizure has been conducted pursuant to this last order.

**PROCEDURAL HISTORY**

The Davises filed this action in February 1994. Their amended complaint alleges that Raborn, Bayless and Bayless & Stokes conspired under color of state law to deprive them of protected liberty and property interests without due process of law. The complaint alleges violations of Article 1 § 10 and the First, Fourth and Fourteenth Amendments to the United States Constitution, and statutory violations under 42 U.S.C. §§ 1983 and 1985. The Davises also sought preliminary injunctive relief to enjoin the defendants from seizing or disposing of property belonging to the Davises during the pendency of the suit. Finally, the complaint states a number of pendant state law claims, including invasion of privacy, conversion, civil conspiracy, intentional infliction of emotional distress, abuse of process, trespass and violation of Article 1 § 19 of the Texas Constitution, which guarantees due process of law.

Defendants filed a 12(b)(6) motion, arguing that they were entitled to absolute judicial immunity from the Davises' claims. With that motion, defendants filed a request that the court take judicial notice of the state court orders authorizing the receiver's actions. The Davises responded and submitted the affidavits of Dr. Johnson and Lana Davis. Taking judicial notice of the state court orders, the district court granted defendants' motion.[3]

## THE DISTRICT COURT'S DISPOSITION

The district court's brief order purports to dismiss the entire complaint, but expressly decides only two issues: (1) that a court appointed **receiver** is entitled to share in the appointing judge's absolute judicial immunity and (2) that alleged misappropriation of property or funds by a **receiver** does not state a constitutional claim for deprivation of due process when state law affords adequate post-deprivation remedies. On its face, the order appears to address only Raborn's liability for federal law claims. We have assumed for purposes of review that the district court intended to extend these principles to the other defendants and to the Davises' state law claims.

## JUDICIAL IMMUNITY

Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided

---

[3] Although not raised by the parties, we note that the district court did not err by dismissing pursuant to rule 12(b)(6) rather than treating the motion as one for summary judgment. Federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss. **Cinel v. Connick**, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Further, the presence of affidavits in the record that were not relied upon by the district court does not convert the motion to dismiss into one for summary judgment. **Ware v. Associated Milk Producers, Inc.**, 614 F.2d 413, 415 (5th Cir. 1980).

5

that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver. **New Alaska Dev. Corp. v. Guetschow**, 869 F.2d 1298, 1303 (9th Cir. 1989); **Property Management & Investments, Inc. v. Lewis**, 752 F. 2d 599, 602-03 (11th Cir. 1985); **T & W Investment Co. v. Kurtz**, 588 F.2d 801, 802 (10th Cir. 1978); **Kermit Contr. v. Banco Credito Y Ahorro Ponceno**, 547 F.2d 1, 3 (1st Cir. 1976); **Bradford Audio Corp. v. Pious**, 392 F.2d 67, 72 (2d Cir. 1968); see also **Boullion v. McClanahan**, 639 F.2d 213 (5th Cir. 1981) (recognizing derived judicial immunity for bankruptcy trustees who act under the supervision of and subject to the orders of the bankruptcy court). Because a receiver's immunity is derivative of the appointing judge's judicial immunity, it must depend, in part, upon whether the state court was acting within its judicial discretion.

**Jurisdiction of the State Court to Enter the Receivership Orders**

Judges are afforded absolute immunity when they (1) perform a normal judicial function; unless they are (2) acting in the clear absence of all jurisdiction. **Stump v. Sparkman**, 98 S. Ct. 1099, 1105-06 (1978). For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity "because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the `clear absence of all jurisdiction.'" **Id**. at 1105. Because "`some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction,'" the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were

6

obviously taken outside the scope of the judge's power. **Id**. at 1105 (quoting **Bradley v. Fisher**, 13 Wall. 335, 352 (1872)).

The Davises argue that defendants Raborn and Bayless are not entitled to immunity because the state court exceeded its authority by ordering the search and seizure of the Davises' property when the Davises were not party to the Newsome litigation. The Davises cite several Texas cases which collectively stand for the proposition that receivers cannot take custody of property in the possession of strangers to the suit. **Ex parte Harvill**, 415 S.W.2d 174 (Tex. 1967); **Ex parte Britton**, 92 S.W.2d 224 (Tex. 1936); **Ex parte Renfro**, 273 S.W. 813 (Tex. 1925). **Harvill**, **Britton** and **Renfro** all involve contempt proceedings brought by the receiver against third parties and are expressly inapplicable to situations in which the third party is an agent of the debtor or is conspiring with the debtor to avoid the debt. **Harvill**, 415 S.W.2d at 177; **Britton**, 92 S.W.2d at 227; **Renfro**, 273 S.W. 814. More importantly, those cases predate the Texas Turnover Statute, TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (Vernon 1986 & Supp. 1991) (formerly TEX, CIV. REV. STAT. ANN. art. 3827a (Vernon Supp. 1980)).

Under the Texas Turnover Statute, courts may authorize the receiver to take control of property that is in the possession of the debtor or is subject to his control. **Beaumont Bank, N.A. v. Buller**, 806 S.W.2d 223, 227 (Tex. 1991). Texas state courts of general jurisdiction can issue and enforce turnover orders against third parties when necessary to obtain non-exempt property of the judgment creditor. See TEX. CIV. PRAC. & REM. CODE ANN. § 31.002; **Beaumont Bank**, 806 S.W.2d 223, 227 (Tex. 1991); **Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.**, 703 S.W.2d 345 (Tex. App.--San Antonio 1985, no

7

writ).  When, as occasionally happens, the enforcement of a turnover order yields to the receivership property in which a third party has an adverse claim, the aggrieved third party may seek recourse in either the receivership court or any other Texas court of proper jurisdiction and venue.  E.g., **Campbell v. Wood**, 811 S.W.2d 753 (Tex. App.--Houston [1st Dist.] 1991, no writ).

The state court did not expressly authorize Raborn to search the Davis home.  That search and alleged seizure apparently was conducted under the general order allowing Raborn to take possession of Johnson's property.  The state court did not act in the clear absence of all jurisdiction by issuing the general order.  Although the state court orders authorizing search of the storage units and safe deposit boxes do not expressly limit the property subject to seizure to that belonging to Johnson, we are convinced that in light of the above principles, the state court was not acting in the "clear absence of all jurisdiction."

## Raborn's Immunity as Receiver

Next the Davises argue that Raborn is not entitled to derivative judicial immunity because she was acting beyond the scope of her authority as receiver of Johnson's assets.  Under Texas law, court appointed receivers may administer the property and "perform other acts in regard to the property as authorized by the court."  TEX. CIV. PRAC & REM. CODE ANN. § 64.031 (West 1986).  Because court orders expressly authorized Raborn to enter the storage unit, she was acting within the scope of her authority as to that search.  See **Boullion v. McClanahan**, 639 F.2d 213, 214 (5th Cir. 1981) (because trustee, "as an arm of the [c]ourt, sought and obtained court approval of his actions, he is

8

entitled to derived immunity"). The search of the Davis home, where Johnson was temporarily resident, is supported by the state court's general order appointing Raborn, which authorized her to take possession of Johnson's non-exempt assets and required Johnson to cooperate with the receiver's efforts, on pain of contempt. Further, it is clear that Raborn was not personally present during the search at Davis' home, and there is no allegation that Raborn instructed Bayless to seize Lana Davis' underwear or any other property belonging to the Davises. Additionally, there is no allegation that Raborn has converted any property for her personal use or that the property has not been accounted for in the receivership.

We are troubled by the fact that Raborn may have allowed Bayless, the attorney for the judgment-creditors, to carry out certain functions assigned by court order to the receiver. Texas law apparently disfavors, but does not prohibit, such reliance by a receiver on counsel for one of the parties to the receivership proceeding. See **Kitchens v. Gassaway**, 128 S.W. 679 (Civ. App. 1910, no writ); see also 63 TEX. JUR. 3d *Receivers* § 97 at 171-72 (1989). Nonetheless, we conclude that that relationship alone is insufficient to abrogate Raborn's immunity. See **Boullion**, 639 F.2d 213, 214 (5th Cir. 1981) (trustee entitled to derivative immunity on claims involving negligent selection of an appraiser). The pleadings clearly demonstrate Raborn's entitlement to immunity on the face of the pleadings and she is immune from suit for damages on the Davises' federal law claims. Raborn's entitlement to immunity from suit on Davises' state law claims is a matter of state, not federal, law and requires the same result as to

9

the Davises' state law claims.  **Byrd v. Woodruff**, 891 S.W.2d 689 (Tex. App.--Dallas 1994, writ denied).

## Bayless and Bayless & Stokes' Immunity

The Davises argue that any immunity afforded to Raborn does not extend to Bayless or the law firm.  Private individuals who conspire with state officials are not entitled to share in the judges' immunity from suit.  **Sparks v. Duval County Ranch Co., Inc.**, 604 F.2d 976 (5th Cir. 1979) (the doctrine of judicial immunity for persons who conspire with judges is without foundation in either reason or authority), cert. denied, 100 S. Ct. 1336 (1980).  Bayless contends, without citation, that she is nonetheless entitled to immunity because she was acting as an agent of and on behalf of the receiver, rather than as a co-conspirator.  On the basis of the pleadings, we find that proposition highly improbable.  Bayless' first duty was to her client, the judgment-creditors, and to satisfaction of the Johnson judgment. Indeed, her role as counsel for one of the parties to the receivership proceeding would have prohibited the state court from appointing Bayless as the receiver. TEX. CIV. PRAC. & REM. CODE ANN. § 64.021 (Vernon 1986).  The Supreme Court has said that absolute immunity should be extended no further than its justification warrants.  **Harlow v. Fitzgerald**, 102 S. Ct. 2727, 2734 (1982).  Texas has likewise refused to extend derivative judicial immunity any further than necessary. **Byrd v. Woodruff**, 891 S.W.2d 689 (Tex. App.--Dallas 1994, no writ).

Bayless offers no factual support for her conclusory allegation that she was acting as Raborn's agent, rather than in her capacity as the judgment-creditors' attorney.  Even assuming that Bayless was Raborn's agent, the Davises allege that Bayless seized women's

10

underwear, which would clearly have exceeded the scope of the receiver's authority to take possession of Dr. Johnson's property. Because the pleadings indicate that Bayless may have exceeded the authority afforded to the receiver, the district court's dismissal of the Davises' damage claims against Bayless and Bayless & Stokes, if not supported by any other ground, must be reversed.

## PARRATT-HUDSON DOCTRINE: ADEQUATE STATE LAW REMEDIES

The district court also relied upon the availability of state law remedies in its decision to dismiss the complaint. "Under the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." **Alexander v. Ieyoub**, 62 F.3d 709, 712 (5th Cir. 1995); see **Hudson v. Palmer**, 104 S. Ct. 3194, 3202-05 (1984); **Parratt v. Taylor**, 101 S. Ct. 1908, 1913-17 (1981), overruled on other grounds, **Daniels v. Williams**, 106 S. Ct. 662 (1986). The doctrine rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are infeasible. See **Zinerman v. Burch**, 110 S. Ct. 975, 985-86 (1990). In such a case, the provision of adequate state law post-deprivation remedies provides all the due process that is required. **Id**.

Conduct is not random and unauthorized when the state has expressly delegated the power and authority to effect the very deprivation complained about. See **Zinermon**, 110 S. Ct. at 989. Thus, at least as to the search of the storage facility and the order authorizing search of safe deposit boxes, it cannot be said that the defendants' conduct was random or unauthorized and pre-deprivation

11

provision of notice and hearing to the parties specifically named in the state court's orders was feasible.  As to the search of the storage room, **Parratt-Hudson** does not bar the Davises' claims.  Further, the **Parratt-Hudson** doctrine can only be applied to negate an alleged violation of procedural due process.  **Augustine v. Doe**, 740 F.2d 322, 326-27 (5th Cir. 1984).  The Davises' allege that the defendants effected a warrantless entry into the Davis home and seized personal property in ostensible satisfaction of Johnson's debt.  We are persuaded that those allegations are sufficient to state a substantive due process claim under the Fourth Amendment.  See **Augustine**, 740 F.2d at 325 (warrantless entry for purpose of arrest and seizure of plaintiff's dog amounted to substantive due process claim such that **Parratt-Hudson** was inapplicable).  The **Parratt-Hudson** doctrine does not negate the Davises' claims for violation of due process in violation of the Fourth and Fourteenth Amendments.

### ROOKER-FELDMAN DOCTRINE

The defendants' argument that dismissal must be affirmed on the basis of **Rooker-Feldman** is also erroneous.  When issues raised in a federal court are "inextricably intertwined" with a state judgment and the court is "in essence being called upon to review the state-court decision," the court lacks subject matter jurisdiction to conduct such a review.  See e.g., **United States v. Shepherd**, 23 F.3d 923, 924 (5th Cir. 1994); see also **District of Columbia Court of Appeals v. Feldman**, 103 S. Ct. 1303 (1983; **Rooker v. Fidelity Trust**, 44 S. Ct. 149 (1923).  However, our Circuit has not allowed the **Rooker-Feldman** doctrine to bar an action in federal court when that same action would be allowed in the state court of the rendering state.  **Gauthier v. Continental Diving**

12

**Serv. Inc.**, 831 F. 2d 559, 561 (5th Cir. 1987) (interpreting **Rooker-Feldman** in a manner consistent with the requirements of the full faith and credit requirement). Texas courts of general jurisdiction allow challenges to orders authorizing receivers to take possession of receivership property or property subject to the control of the receiver. **Campbell v. Wood**, 811 S.W.2d 753 (Tex. App.--Houston [1st Dist.] 1991, no writ). The Davises' could have raised their claims in either the 133rd Judicial District Court or any other Texas court of proper jurisdiction and venue. **Id**. Therefore, **Rooker-Feldman** is inapplicable to the present case.

## INJUNCTIVE RELIEF

While rule 12 does not require that the district court enter findings of fact or conclusions of law when deciding a motion to dismiss, we have required that the district court explain its reasons in sufficient detail to allow this Court to determine whether the district court correctly applied the proper legal rule. See e.g., **Wildbur v. Arco Chemical Co.**, 974 F.2d 631, 644 (5th Cir. 1992). When the district court's "reasoning is vague or simply left unsaid, there is little opportunity for effective review." **McIncrow v. Harris County**, 878 F.2d 835, 836 (5th Cir. 1990). "In such cases, we have not hesitated to remand the case for an illumination of the court's analysis through some formal or informal statement of reasons." **Id**.

In this case, we are unable to discern any basis for the district court's dismissal of the Davises' claim for injunctive relief under § 1983. Dismissal as to that claim will therefore be reversed and remanded to the district court. We note for the purposes of remand that "judicial immunity is not a bar to prospective injunctive relief

13

against a judicial officer acting in her judicial capacity." **Pulliam v. Allen**, 466 U.S. 522, 541-42 (1984); **Crane v. Texas**, 759 F.2d 412, 421 n.11 (5th Cir.) ("state court judges are not immune from federal suits seeking equitable or declaratory relief"), modified in part on other grounds, 766 F.2d 193 (5th Cir.), cert. denied, 474 U.S. 1020 (1985).

Finally, the Davises' claims that the defendants acted in violation of Article 1 § 10 and the First Amendment are conclusory and completely without factual support in the pleadings. Because Davis failed to allege any factual basis for those claims, the district court's dismissal of those claims will be affirmed. **Blackburn v. City of Marshall**, 42 F.3d 925, 931 (5th Cir. 1995).

## CONCLUSION

The pleadings establish that Raborn, as a court appointed receiver, is entitled to derivative judicial immunity from the Davises' federal and state law damage claims. Bayless and the law firm, Bayless & Stokes, were not acting under the supervision of, and were not accountable to, the court. Those defendants are therefore not entitled to immunity from suit as to the Davises' federal and state law damage claims. Dismissal as to the claims against defendants Bayless and the law firm Bayless & Stokes is not otherwise justified on the basis of the **Hudson-Parratt** or **Rooker-Feldman** doctrines. The district court's order provides no meaningful basis for review of its dismissal of the Davises' claim for preliminary injunctive relief under § 1983, which would ordinarily survive a finding of judicial immunity.

The district court's dismissal of the Davises' claims based on Article 1 § 10 and the First Amendment of the United States

14

Constitution is AFFIRMED as to defendants Raborn, Bayless and the law firm, Bayless & Stokes. The district court's dismissal of all damage claims based on state or federal law against the receiver Raborn is AFFIRMED on the basis of derived judicial immunity. The district court's dismissal of all damage claims against Bayless and the law firm, Bayless & Stokes, is REVERSED and REMANDED for further development consistent with this opinion. The district court's apparent dismissal of the Davises' claim for injunctive relief is REVERSED and REMANDED for further development consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED to the district court.