## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

| | | |
|---|---|---|
| **JAMIE HAMILTON and wife** | ) | Obion County Circuit Court |
| **BONNIE HAMILTON**, | ) | No. 7-719 |
| | ) | |
| Plaintiffs/Appellants. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9712-CV-00324 |
| | ) | |
| **GARY COOK, KEN DYKES, ANDY** | ) | |
| **TWEED, WADE HENDRON, FRANK** | ) | |
| **EVANS, TENNESSEE WILDLIFE** | ) | |
| **RESOURCES AGENCY, TENNESSEE** | ) | |
| **WILDLIFE RESOURCES** | ) | |
| **COMMISSION, HAROLD HURST,** | ) | |
| **BRIAN THOMPSON, LARRY** | ) | |
| **THURSTON, JEFF MARTIN, and** | ) | |
| **PAUL BROWN**, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

FILED

**October 12, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

From the Circuit Court of Obion County at Union City.
**Honorable William B. Acree, Jr., Judge**

**Vincent A. Sikora**, THE SIKORA LAW FIRM, Piney Flats, Tennessee
Attorney for Plaintiffs/Appellants.

**John Knox Walkup, Attorney General and Reporter**
**Elizabeth P. McCarter, Senior Counsel**
Attorneys for Defendants/Appellees.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiffs Jamie and Bonnie Hamilton, husband and wife, appeal the trial court's final judgment dismissing their claims for declaratory and injunctive relief against Defendants/Appellees Tennessee Wildlife Resources Agency and Tennessee Wildlife Resources Commission and dismissing their civil rights claim against other Defendants/Appellees who are employees of the Tennessee Wildlife Resources Agency. We affirm in part and reverse in part the trial court's judgment.

## I. Procedural History

The Hamiltons instituted this action in August 1997 by filing a four-count complaint against the Defendants in the Circuit Court for Obion County. The Hamiltons' complaint contained the following factual allegations:

1. Plaintiffs, Jamie Hamilton and Bonnie Hamilton, are citizens and residents of Obion County, Tennessee, and are the owners of the property shown at Exhibit 1[1] (hereafter referred to as Property).

2. Defendant Tennessee Wildlife Resources Agency (hereafter TWRA) is a state governmental agency created pursuant to T.C.A. sec. 70-1-301. At all times relevant Defendants Ken Dykes, Gary Cook, Andy Tweed, Wade Hendron, and Frank Evans were employees of TWRA assigned to Obion County from the Jackson, Tennessee, office of TWRA, and were acting under color of state law. Defendant Cook is TWRA Region 1 assistant supervisor. Defendant Dykes is the TWRA area law enforcement supervisor. Defendants Tweed, Hendron and Evans are TWRA Wildlife Officers in the Reelfoot Lake District.

3. Defendant Tennessee Wildlife Resources Commission (hereafter Commission) is an independent and separate, state administrative board of conservation for game, fish and wildlife established by T.C.A. sec. 70-1-201.

4. [The Hamiltons'] Property adjoins and underlies a portion of the southeastern side of Reelfoot Lake in Obion County. Their Property line extends about 100 yards into the Lake. The Lake, at ordinary low pool level, covers about 10 acres of their Property.

5. On or about November 16, 1996, Plaintiff Jamie Hamilton set duck decoys in Reelfoot Lake, and secured a properly permitted boat with a duck blind on it, to a light pole placed by [the Hamiltons] without objection almost 30 years earlier in Reelfoot Lake, which pole is located a short distance from the Property.

[1]Exhibit 1 consisted of a warranty deed describing the Hamiltons' property in Obion County.

6.      Shortly after the boat and decoys were placed, they were left unattended by [the Hamiltons]. Then, without consent or a warrant, TWRA agents (Defendants Tweed, Hendron and Evans), at the direction of Defendants Cook and Dykes, searched and seized the boat and decoys, and took them to the TWRA headquarters at Reelfoot WMA. [The Hamiltons] are informed and believe said Defendants knew [the Hamiltons] were riparians and acted with callous and reckless disregard for their rights. The items were returned to [the Hamiltons] about 10 days later, and their seizure and publicity of it by Defendants, directly and proximately caused [the Hamiltons] damage to their property rights and business, and mental anguish. [The Hamiltons] fully intend to utilize their property to hunt and fish. So it is probable that such searches and seizures will re-occur.

7.      Defendants TWRA and the Commission have established a "Reelfoot Lakeshore Use Permit' program as shown by Exhibit 2. The permit is subject to the list of '<u>CONDITIONS</u>' shown in Exhibit 2.[2] [The Hamiltons] refuse to obtain any such permit since it deprives them of property rights and their right to travel. Defendants are without authority over navigation on Reelfoot Lake, but intend to enforce their illegal permit requirements which will damage and injure [the Hamiltons'] property rights.

8.      Defendant Commission allows the usage of State of Tennessee facilities as access points to Reelfoot Lake by non-riparians. This has caused Reelfoot Lake to become crowded and congested, and increased litter and pollution. Non-riparians hunt and fish above [the Hamiltons'] lake bed property. Such activities, directly and proximately damage [the Hamiltons'] property rights.

9.      [The Hamiltons] intend to extend their dock farther into Reelfoot Lake on the Property. [The Hamiltons] are informed and believe Defendant TWRA will prohibit such actions and the individual Defendants will destroy the structure once built. Defendants have no authority over the placement or construction of a dock by [the Hamiltons] on the Property in Reelfoot Lake.

10.      [The Hamiltons] are entitled to a declaratory judgment, pursuant to T.C.A. sec. 29-14-101 *et seq.*, declaring the acts of Defendants invalid, unlawful, and in deprivation of those rights, privileges and immunities secured to [the Hamiltons] by the United States Constitution and laws of Tennessee.

Count 1 of the Hamiltons' complaint asserted a claim for damages against the individual Defendants under 42 U.S.C. § 1983 based on their seizure of the Hamiltons' boat, duck blind, and decoys. The Hamiltons' remaining three counts asserted claims for declaratory and injunctive relief against TWRA and the Commission.[3] Specifically, the Hamiltons' complaint sought

---

[2]Exhibit 2 consisted of an application packet for a 1997 Reelfoot Lakeshore Use Permit.

[3]Although the language of the Hamiltons' complaint was not entirely clear, at the hearing on the Defendants' motion to dismiss, counsel for the Hamiltons explained that count 1 was "against the individual officers" only, whereas counts 2, 3, and 4 were "against the state."

(1) an order declaring that enforcement of the permit program violated the Hamiltons' constitutional rights and enjoining TWRA and the Commission from enforcing the permit program against the Hamiltons; (2) an order declaring that TWRA and the Commission violated the Hamiltons' constitutional rights by allowing non-riparians to access and use Reelfoot Lake and prohibiting said Defendants from granting access to Reelfoot Lake to non-riparians; and (3) an order declaring that TWRA and the Commission violated the Hamiltons' rights to Reelfoot Lake as riparians and enjoining said Defendants from interfering with any actions of the Hamiltons to extend their dock on their lake bed property. In seeking declaratory relief, the Hamiltons cited 42 U.S.C. § 1983 and T.C.A. § 29-14-101 *et seq*.

In response, the Defendants filed an answer and a motion to dismiss asserting, ***inter alia***, that the Hamiltons' complaint failed to state a claim upon which relief could be granted,[4] that the trial court lacked subject matter jurisdiction[5] over the Hamiltons' claims for declaratory and injunctive relief because the Hamiltons had not exhausted all available administrative remedies, that the Hamiltons' claims against the Defendants were barred by the doctrine of sovereign immunity, and that the Hamiltons' claim for damages against the individual Defendants was barred by the doctrine of qualified immunity.

Prior to the hearing on the Defendants' motion to dismiss, the Hamiltons filed a motion to amend their complaint to assert a section 1983 claim against five additional TWRA officers, including Harold Hurst, Brian Thompson, Larry Thurston, Jeff Martin, and Paul Brown. The proposed amendment specified that each of these officers was being sued in his individual capacity.

The hearing on the Defendants' motion to dismiss took place on November 7, 1997. At the conclusion of the parties' arguments, the trial court took a short recess and then orally announced its ruling from the bench. After granting the Hamiltons' motion to amend their complaint, the trial court announced that it was granting the Defendants' motion to dismiss the

_____

[4] *See* T.R.C.P. 12.02(6).

[5] *See* T.R.C.P. 12.02(1).

amended complaint for the following reasons:

> First of all, the complaint fails to state a claim upon which relief can be granted. Secondly, as matter of law [the Hamiltons] have no ownership interest in and to Reelfoot Lake.
>
> Three, there is no allegation of any constitutional right of [the Hamiltons] which was violated by the defendants which would entitle [the Hamiltons] to maintain their suit under 42 U.S.C. 1983.
>
> Four, the individual defendants were, according to the way I read the complaint, acting in their official capacities. The TWRA and the . . . Tennessee Wildlife Resources Commission are state agencies. Sovereign immunity prohibit[s] this suit against the agency, the commission, and the individual defendants.
>
> Finally, any issue concerning these regulations must be pursued through the administrative procedures act. This was not done and this issue cannot be decided in this Court.

After the hearing at which the trial court orally announced its ruling dismissing the Hamiltons' complaint, the Hamiltons filed a notice of nonsuit in which they attempted to voluntarily dismiss their complaint without prejudice pursuant to rule 41.01 of the Tennessee Rules of Civil Procedure. The Defendants then filed a motion to strike the Hamiltons' notice.

The trial court ruled that the Hamiltons no longer had the right to take a voluntary nonsuit because the trial court already had determined the case upon its merits. Accordingly, the trial court entered a written order granting the Defendants' motion and striking the Hamiltons' notice of nonsuit. The trial court also entered a final order dismissing the Hamiltons' complaint and reiterating the reasons for dismissal which were announced orally by the trial court at the hearing.

On appeal, the Hamiltons have presented the following issues for this court's review:

> 1. Whether the action was voluntarily dismissed as a matter of right upon [the Hamiltons'] filing of their Notice of Nonsuit.
>
> 2. Whether the action should have been dismissed as a matter of the trial court's discretion upon [the Hamiltons'] filing of their Notice of Nonsuit.
>
> 3. Whether the court lacked jurisdiction because [the Hamiltons] did not exhaust their administrative remedies.

4. Whether the Complaint states a claim upon which relief can be granted.

5. Whether [the Hamiltons] established a constitutionally protected ownership interest in Reelfoot Lake and the lake bed.

6. Whether the individual Defendants were sued in their official capacities.

7. Whether all Defendants were protected by sovereign immunity.

8. Whether [the Hamiltons] alleged that the Defendants' acts violated clearly established constitutional rights.

## II. The Hamiltons' Notice of Nonsuit

Before addressing the merits of the Hamiltons' complaint, we first must decide the issue of whether the Hamiltons had the right to take a voluntary nonsuit after the trial court orally announced its ruling dismissing the Hamiltons' complaint but before the court entered its written order of dismissal. As pertinent, rule 41.01 provides that

> Subject to the provisions of Rule 23.05 or Rule 66 or any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict.

T.R.C.P. 41.01(1).

In interpreting the foregoing rule, the courts of this state have held that, in non-jury cases, the plaintiff has the right to take a voluntary dismissal "until the matter has been finally submitted to the trial judge for decision." *Weedman v. Searcy*, 781 S.W.2d 855, 857 (Tenn. 1989); *accord Harris v. Harris*, No. 01A01-9511-CV-00518, 1996 WL 225702, at *5 (Tenn. App. May 3, 1996); *Willbanks v. Trousdale County Bd. of Educ.*, 1986 WL 1663, at *3 (Tenn. App. Feb. 7, 1986). Once the case finally has been submitted to the trial court for a determination on the merits,

however, the plaintiff no longer can take a voluntary dismissal as a matter of right. *Id.*

In accordance with the foregoing authorities, we conclude that the Hamiltons no longer had the right to take a voluntary dismissal when they filed their notice of nonsuit. At that point, the Defendants' motion to dismiss already had been submitted to the trial court for a determination on the merits and, in fact, the trial court had ruled on the Defendants' motion by announcing that it was dismissing the Hamiltons' complaint. Under these circumstances, the Hamiltons lost the ability to take a voluntary dismissal as a matter of right.

On appeal, the Hamiltons contend that, even if they lost the right to take a voluntary dismissal, the trial court, in the exercise of its discretion, still had the authority to grant their request for a voluntary dismissal. The Hamiltons further contend that the trial court abused its discretion when it struck their notice of nonsuit.

This court previously has held that, where the right to take a voluntary dismissal is in the discretion of the trial court, the general rule is that the trial court should grant a voluntary dismissal, "absent some showing of plain legal prejudice to the defendant." *Oliver v. Hydro-Vac Servs. Inc.*, 873 S.W.2d 694, 696 (Tenn. App. 1993) (quoting *Price v. Boyle Inv. Co.*, 1990 WL 60659, at *3 (Tenn. App. May 11, 1990), *perm. app. denied* (Tenn. June 11, 1990)). On the other hand, the trial court should not grant a nonsuit if doing so would "deprive the defendant of some right that became vested during the pendency of the case." *Oliver v. Hydro-Vac Servs.*, 873 S.W.2d at 696 (quoting *Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975)).

This court has made clear that the possibility of the defendant being subjected to a second lawsuit does not constitute sufficient legal prejudice to preclude the plaintiff from receiving a voluntary nonsuit. *Oliver v. Hydro-Vac Servs.*, 873 S.W.2d at 696. In construing the federal counterpart to rule 41.01, however, one court has found sufficient prejudice to exist where the defendant successfully has demonstrated a valid defense, such as the statute of limitations, to the plaintiff's claims. *See Metropolitan Fed. Bank v. W.R. Grace & Co.*, 999 F.2d 1257, 1262-63 (8th Cir. 1993). Another court has found sufficient prejudice to exist where the plaintiff moves for a voluntary dismissal after participating in a hearing where the trial judge expresses an adverse opinion

on the merits of the plaintiff's claim. *See Piedmont Interstate Fair Ass'n v. Bean*, 209 F.2d 942, 947-48 (4th Cir. 1954).

We conclude that similar prejudice would result to the Defendants in the present case if the Hamiltons were permitted to take a voluntary dismissal. At the point they filed their notice of nonsuit, the Hamiltons had participated in a hearing on the Defendants' motion to dismiss at which the Defendants demonstrated valid defenses to a majority of the Hamiltons' claims for relief. Moreover, the trial court already had issued its oral ruling dismissing all claims against the Defendants. We hold that, under these circumstances, the trial court did not abuse its discretion in refusing to permit the Hamiltons to take a voluntary dismissal. Although the present case involves a non-jury proceeding, we consider it to be somewhat analogous to the situation in a jury proceeding where the plaintiff attempts to take a voluntary nonsuit after the trial court orally has granted the defendant's motion for a directed verdict. Such a practice is forbidden by both the rule and our case law. *See German v. Nichopoulos*, 577 S.W.2d 197, 201 (Tenn. App. 1978); T.R.C.P. 41.01(1).

### III.  The Hamiltons' Claims for Declaratory and Injunctive Relief
### Against TWRA and the Commission

Counts 2, 3, and 4 of the Hamiltons' complaint asserted causes of action for declaratory and injunctive relief against the TWRA and the Commission pursuant to both section 1983 and Tennessee's Declaratory Judgment Act. We conclude that the trial court properly dismissed the Hamiltons' claims for declaratory and injunctive relief to the extent that these claims may have been brought pursuant to section 1983. As pertinent, section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C.A. § 1983 (West Supp. 1998). A state is not a "person" as that term is used in section 1983 and, thus, may not be sued under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58,

64 (1989). Accordingly, we hold that section 1983 did not authorize the Hamiltons to bring these claims against the TWRA and the Commission. *Id*. at 66.

We also conclude that Tennessee's Declaratory Judgment Act, codified at Tennessee Code Annotated section 29-14-101 *et seq.*, did not authorize the Hamiltons' claims for declaratory relief against TWRA and the Commission. Section 29-14-102(a) "gives courts of record the power to render declaratory judgments '*within their respective jurisdictions*.'" *Spencer v. Cardwell*, 937 S.W.2d 422, 424 (Tenn. App. 1996) (emphasis in original). Citing the rule of sovereign immunity, however, the courts of this state have held that this statute does not authorize suits for declaratory relief against the State of Tennessee or any of its officers. *Id*.; *see also L.L. Bean, Inc. v. Bracey*, 817 S.W.2d 292, 297 (Tenn. 1991); *Northern Telecom, Inc. v. Taylor*, 781 S.W.2d 837, 840 (Tenn. 1989), *cert. denied*, 496 U.S. 905 (1990); *Watson v. Department of Correction*, No. 01A01-9707-CH-00360, 1998 WL 4707, at *2 (Tenn. App. Jan. 9, 1998), *perm. app. denied* (Tenn. May 26, 1998).

Under the rule of sovereign immunity, "no suit against the State may be sustained absent express authorization from the Legislature." *Spencer v. Cardwell*, 937 S.W.2d at 423 (citing *Coffman v. City of Pulaski*, 422 S.W.2d 429 (Tenn. 1967)). This rule is both constitutional and statutory. *Spencer v. Cardwell*, 937 S.W.2d at 423. The Tennessee Constitution provides that "[s]uits may be brought against the State in such a manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. Additionally, the Tennessee Code Annotated provides that

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

T.C.A. § 20-13-102(a) (1994).

In interpreting the foregoing statute, the supreme court and this court have held that section 20-13-102(a) prohibits the courts of this state from entertaining a declaratory judgment action

against the state or a state officer. Quoting *Hill v. Beeler*, 286 S.W.2d 868, 871 (Tenn. 1956), these courts have reasoned that, inasmuch as the Declaratory Judgment Act does not permit the filing of a suit against the state, no authority exists for filing a declaratory judgment action against the state and, in fact, section 20-13-102(a) expressly prohibits such an action. *L.L. Bean, Inc. v. Bracey*, 817 S.W.2d at 297; *Northern Telecom, Inc. v. Taylor*, 781 S.W.2d at 840; *Spencer v. Cardwell*, 937 S.W.2d at 424.

In *Northern Telecom, Inc. v. Taylor*, for example, our supreme court affirmed the trial court's dismissal of an action for declaratory relief where the plaintiff was seeking an order declaring that the Commissioner of Revenue "was authorized to refund the taxes in question or, in the alternative, that the commissioner's refusal to consider the refund deprive[d] the plaintiff of its rights under 42 U.S.C. § 1983." *Northern Telecom, Inc. v. Taylor*, 781 S.W.2d at 838. In *Spencer v. Cardwell*, this court affirmed the trial court's dismissal of an action for declaratory relief where the plaintiff was seeking an order declaring that the Commissioner of the Tennessee Department of Mental Health and Mental Retardation had violated the plaintiff's due process rights as a result of his termination as a civil service employee. *Spencer v. Cardwell*, 937 S.W.2d at 422.

We similarly conclude that the Hamiltons' claims for declaratory relief were properly dismissed in this case. In their various claims for declaratory relief, the Hamiltons requested orders declaring that the actions of the TWRA and the Commission violated their rights under the United States Constitution and section 1983. In accordance with the foregoing authorities, we hold that such claims may not be maintained pursuant to Tennessee's Declaratory Judgment Act.[6] We also hold that the Hamiltons' claims for injunctive relief must fail, inasmuch as these claims were predicated on the trial court first issuing an order declaring the parties' respective rights in this case. *See Hold Stitch Fabric Mach. Co. v. May Hosiery Mills*, 195 S.W.2d 18, 24 (Tenn.), *cert. denied*, 329 U.S. 759 (1946).

_____

[6]We note that "[t]he Uniform Administrative Procedures Act provides the jurisdictional prerequisites for seeking review of an agency's actions through a declaratory judgment proceeding." *Davis v. Sundquist*, 947 S.W.2d 155, 156 (Tenn. App. 1997). In the present case, the Hamiltons appear to have satisfied none of these jurisdictional prerequisites. *See* T.C.A. §§ 4-5-223 to -225 (1991 & Supp. 1997).

*IV. The Hamiltons' Section 1983 Claim Against the Individual Defendants*

We reach a different result with regard to the Hamiltons' section 1983 claim against the individual Defendants as set forth in Count I. In dismissing this claim, the trial court ruled that all of the individual TWRA employees named in the complaint were acting in their "official capacities" and, thus, the suit against them was barred by the doctrine of sovereign immunity. Alternatively, the trial court reasoned that the complaint failed to state a claim upon which relief could be granted and that the Hamiltons failed to allege that the individual Defendants' acts violated any clearly established constitutional rights under section 1983. We conclude that none of the foregoing reasons provided a valid basis for dismissing the Hamiltons' section 1983 claim against the individual Defendants.

Our supreme court recently set forth the standard to be applied by a court in ruling on a motion to dismiss a complaint pursuant to rule 12.02(6) of the Tennessee Rules of Civil Procedure:

> A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law. The motion admits the truth of all relevant and material allegations, but asserts that such facts do not constitute a cause of action. In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true.

*Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996).

In their complaint, the Hamiltons claimed that the individual Defendants searched and seized their boat, duck blind, and decoys in violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The Fourth Amendment, as applicable to the states through the Fourteenth Amendment, grants persons the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of property occurs "when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994)

(quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). The Fourth Amendment's protection against seizures of property applies even "in a context in which privacy or liberty interests are not implicated." *Bonds v. Cox*, 20 F.3d at 702.

Here, the Hamiltons alleged that they placed some decoys and a properly permitted boat containing a duck blind in Reelfoot Lake near their property; that, without their consent or a warrant, the individual Defendants searched and seized the boat and decoys in violation of the Fourth and Fourteenth Amendments; and that these Defendants retained the items for approximately ten days before returning them to the Hamiltons. Based on these allegations, we conclude that the Hamiltons have asserted a violation of their Fourth Amendment rights and that they have stated a claim under section 1983.[7] *See Bonds v. Cox*, 20 F.3d at 702; *see also Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir. 1995);[8] *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995); *Rose v. Town of Jackson's Gap*, 952 F. Supp. 757, 764 (M.D. Ala. 1996).

We also conclude that the law does not support the trial court's ruling that the individual Defendants were sued in their official, as opposed to their individual, capacities. Just as section 1983 does not authorize a suit against the state, the statute also does not authorize suits for damages against state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The rationale for this rule is that state officers sued for damages in their official capacities are not "persons" within the meaning of section 1983 because such officers "assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

---

[7]The parties have directed this court's attention to the case of *State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 752-53 (Tenn. 1913), in which our supreme court discussed the rights of property owners whose lands became submerged when Reelfoot Lake was created by an earthquake in 1810. We note, however, that the Hamiltons' complaint asserts that their boat, duck blind, and decoys were placed in Reelfoot Lake "a short distance from" their property rather than in the portion of the lake which "covers" their property. We further note that the Hamiltons have a property interest in their boat, duck blind, and decoys which is independent of any property rights which they might assert as riparians of Reelfoot Lake. Accordingly, our resolution of the Hamiltons' section 1983 claim against the individual Defendants does not require this court to resolve the nature or extent of the Hamiltons' asserted riparian rights to Reelfoot Lake.

[8]Inasmuch as these allegations were sufficient to state a substantive due process claim under the Fourth Amendment, as opposed to merely a procedural due process claim, the availability of any state law remedies did not provide a ground to dismiss the Hamiltons' section 1983 claim. *See Davis v. Bayless*, 70 F.3d at 375; *cf. Dean v. Campbell*, No. 02A01-9704-CV-00077, 1997 WL 401960, at *1 (Tenn. App. July 17, 1997).

In an official-capacity suit, the real party in interest is the governmental entity and not the named official. *Id*. at 25. As the United States Supreme Court has explained,

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877, 83 L. Ed. 2d 878 (1985). As such, it is no different from a suit against the State itself.

*Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

Moreover, in distinguishing between official-capacity suits and personal-capacity suits, the Supreme Court has explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, official-capacity suits are best understood as referring "to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. at 26. For example, when a state official sued in his official capacity dies or leaves office during the pendency of the action, "the officer's successor is automatically substituted as a party." T.R.C.P. 25.04(1); *see also* Fed. R. Civ. P. 25(d)(1).

In light of the Supreme Court's discussions of this issue, we reject the argument advanced by the Defendants in this case that the individual Defendants were sued in their official rather than their personal capacities. According to the complaint's allegations, each of the individual Defendants personally participated to some degree in the wrongful seizure of the Hamiltons' property. The caption of the Hamiltons' complaint listed each of the individual Defendants by name without reference to the various offices these individuals held. The complaint sought $1,000 in compensatory damages and $10,000 in punitive damages from "each" of the individual Defendants. Moreover, the Hamiltons' amended complaint named five additional TWRA officers and asserted

that each was being sued in his individual capacity. We conclude that the complaint's language, when viewed in its entirety, was sufficient to notify the individual Defendants that the Hamiltons were seeking to recover damages from the individual Defendants directly rather than from the state. *See, e.g.*, *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995); *cf. Wells v. Brown*, 891 F.2d 591, 593-94 (6th Cir. 1989) (dismissing section 1983 action where complaint identified individual defendants' official titles and failed to specify that plaintiffs were seeking to hold individual defendants personally liable for damages). Accordingly, we hold that the trial court erred in dismissing the Hamiltons' section 1983 claim against the individual Defendants on the ground that they were sued only in their official capacities.

Although the individual Defendants in this case were not entitled to a dismissal of the action against them based on the official-capacity defense, having been sued in their personal capacities, they were entitled to assert personal immunity defenses, such as objectively reasonable reliance on existing law or the defense of qualified immunity. *Hafer v. Melo*, 502 U.S. at 25; *Hardin v. Straub*, 954 F.2d 1193, 1201 (6th Cir. 1992). One court has described the defense of qualified immunity as follows:

> Qualified immunity shields police officers "from suit for damages if 'a reasonable officer could have believed [the action] to be lawful, in light of clearly established law and the information the officers possessed.'" [*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)], quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987). The availability of immunity depends not on an officer's subjective good faith but rather on an objective reasonableness standard. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Frequently the general rule, such as the right to be free from unreasonable seizures, is well-established; the crucial question is whether the law was clear in relation to the specific facts confronting the police officer. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 436 (7th Cir. 1993).

*Scott v. Glumac*, 3 F.3d 163, 164 (7th Cir. 1993). Under the qualified immunity defense, a police officer or other law enforcement officer may be shielded from liability if he can demonstrate that he reasonably relied on a state law, rule, regulation, or policy authorizing the seizure of the plaintiff's property under the facts of the case. *See, e.g.*, *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995) (holding that prison officials who seized newspaper clippings from inmate's incoming personal mail in violation of his First Amendment rights were entitled to rely on prison policy prohibiting receipt

of newspapers from any source other than publisher or approved distributor).

On appeal, the Defendants contend that the trial court's dismissal of the Hamiltons' section 1983 claim should be affirmed on the alternative ground of qualified immunity. Specifically, the individual Defendants contend that they were entitled to rely on TWRA Rule 1660-1-2-.02, which authorized the removal of unregistered or unnumbered floating waterfowl blinds from the Reelfoot Wildlife Management Area "at the discretion of the area manager or a designee of [TWRA]." Tenn. Comp. R. & Regs. 1660-1-2-.02(3)(c) (as revised in July 1996). We reject this argument, however, because the pleadings fail to establish that the individual Defendants were entitled to this defense as a matter of law.

The Hamiltons' complaint indicates that their boat was being used as part of a floating waterfowl (duck) blind. Under the applicable TWRA rule, TWRA officers were authorized to remove the floating waterfowl blind from Reelfoot Lake, at the discretion of the area manager or a designee of TWRA, provided that the floating waterfowl blind was either unregistered or unnumbered. Tenn. Comp. R. & Regs. 1660-1-2-.02(3)(c) (as revised in July 1996). Although the Defendants' answer asserts that the waterfowl blind was unregistered, the Hamiltons' complaint fails to contain any allegations relative to this fact, except for the assertion that the boat itself was "properly permitted." Inasmuch as the complaint is silent on the factual issue of whether or not the waterfowl blind was registered, we conclude that a genuine issue of material fact exists as to the availability of the defense of qualified immunity and that this issue more properly would be addressed by a motion for summary judgment or other appropriate proceeding. *See Dominque v.*

*Telb*, 831 F.2d 673, 677 (6th Cir. 1987).[9]

## *V. Conclusion*

That portion of the trial court's judgment dismissing the Hamiltons' section 1983 claim against the individual Defendants is reversed, and this cause is remanded for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. In light of our resolution of this appeal, we pretermit any issues not specifically addressed in this opinion. Costs of this appeal are taxed to the individual Defendants, for which execution may issue if necessary.

_____

FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)

_____

[9]In ***Dominque v. Telb***, the court indicated that, at least in federal court, the plaintiff has the burden of going forward once the defendant properly raises the issue of qualified immunity by way of affirmative defense, motion to dismiss, or motion for summary judgment. ***Dominque v. Telb***, 831 F.2d at 677. The court also recognized, however, that factual ambiguities may prevent the trial court from deciding this issue on a motion to dismiss. The court explained:

> If the complaint itself is ambiguous in its factual allegations, and if that ambiguity results in a determination that under one set of facts the plaintiff's federal rights were violated and in another they were not, then presumably the district court can so hold, and the matter may then either be appealed or proceed on to the discovery stage, after which it might be possible to resolve the issue by appropriate motion for summary judgment.

***Dominque v. Telb***, 831 F.2d at 677. The present dispute appears to be such a case.