Jerry A. GAUTHIER, Plaintiff-Appellee,

v.

**CONTINENTAL DIVING SERVICES, INC., et al., Defendants-Appellants.**

No. 86–4381.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1987.

William A. Porteous, III, New Orleans, La., for defendants-appellants.

Lawrence K. Burleigh, Morgan City, La., for plaintiff-appellee.

Before WISDOM, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Continental Diving Services, Inc., appeals from an adverse judgment entered on a jury verdict in a Jones Act—general maritime law action. We find no error and affirm.

## I.

Jerry Gauthier was employed by Continental Diving Services, Inc., (Continental) as a diver. On October 3, 1981, Gauthier suffered a decompression injury while bell-diving.

In July 1982, Gauthier entered into a settlement agreement with Continental and its insurers. Gauthier agreed to release Continental from all liability arising from the October 2, 1981 accident for the sum of $50,000. In addition to the monetary consideration, Continental's president orally promised Gauthier that he could continue diving for the company. Several months after the settlement was concluded, Continental's insurer concluded that Gauthier's continued diving exposed it to an unacceptable risk of liability and Continental decided not to permit Gauthier to dive.

The parties reduced the settlement agreement to a stipulation of facts and presented it to a judge of the 15th Judicial District Court of Louisiana. The court appointed an attorney to explain to Gauthier the terms and conditions of the settlement agreement. After a brief hearing, the court entered a judgment in favor of Gauthier for $50,000 under the Jones Act and general maritime law based upon the parties' stipulations of fact.

In 1984, Gauthier sued Continental in federal district court under the Jones Act, 46 U.S.C. § 688, and general maritime law for the injuries he suffered in the October 3, 1981 accident. Continental moved for summary judgment on res judicata grounds, arguing that the state court judgment was an enforceable consent decree, and that Gauthier had knowingly and voluntarily released any claims he had against

Continental arising out of the 1981 accident.

The district court denied Continental's summary judgment motion because "[p]laintiff's affidavit raises doubts as to whether the plaintiff was actually promised that he would keep his job in return for his agreement to settle. There is also doubt as to whether the Continental doctor's diagnosis or prognosis, upon which plaintiff may have based his agreement to settle, was in error."

After a three-day trial, the jury returned a $300,000 verdict for Gauthier, determining that the July 1982 settlement agreement was not enforceable, that Continental was negligent, and that Gauthier did not contribute to his own injuries. The district court denied Continental's motions for JNOV and new trial.[1]

Continental argues on appeal that: (1) the state court consent judgment forecloses a later examination of the seaman's appreciation and understanding of the agreement leading to the consent judgment; (2) the trial court should have granted Continental's motion for summary judgment or directed verdict because the evidence was insufficient to support a jury verdict for Gauthier; (3) the jury charge was "practically unintelligible" to the average juror.

## II.

### A.

At oral argument, the court questioned whether the district court had jurisdiction over Gauthier's federal court suit because of the *Rooker-Feldman* doctrine. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held:

[A] United States District Court is without authority to review final determinations of [a state court] in judicial proceedings. Review of such determinations can be had only in this Court.

---

1. Continental also filed a motion to correct judgment in which it alleged the $300,000 verdict should be reduced by the $50,000 it had paid Gauthier under the settlement agreement. The district court entered an amended judgment granting Continental's request.

*Id.* at 1315. *Feldman* involved an applicant to the bar of the District Court of Columbia who was denied admittance by the highest District of Columbia court. The applicant then filed a § 1983 suit in federal court alleging that the denial of admittance violated his federal constitutional rights. The Supreme Court held that the district court had no jurisdiction to *review* the final judgment of the highest court of a state.[2]

■ *Rooker-Feldman* casts in jurisdictional terms a rule that is very close if not identical to the more familiar principle that a federal court must give full faith and credit to a state court judgment. *See* 18 *C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure* § 4469 at 664–68 (1981). To satisfy the full faith and credit requirement, a federal court must give the same deference to a state court judgment that a court of the rendering state would give it. 28 U.S.C. § 1738 (1986); *see also A.L.T. Corp. v. Small Business Admin.,* 801 F.2d 1451, 1456 (5th Cir.1986). We decline to apply *Rooker-Feldman* in a way that would require a federal court to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it. For reasons explained below, we conclude that a Louisiana state court would permit Gauthier to attack the consent judgment. Consequently *Rooker-Feldman* does not bar his attack in federal court.

### B.

■ To determine the preclusive effect of a state court judgment, we ordinarily look to the state substantive law. But the general maritime law governs the preclusive effect of a seaman's settlement and consent decree regardless of whether the seaman's action is pending in state or federal court. *Scola v. Boat Frances R., Inc.,* 546 F.2d 459, 460–61 (1st Cir.1976). Consequently the district court correctly looked to the general maritime law to determine the preclusive effect of the state court judgment.

### C.

Seamen are the "wards of admiralty," whose rights federal courts are duty bound to zealously protect. *Garrett v. Moore-McCormack, Co.,* 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239 (1942); *Parks v. Dowell Div. of Dow Chemi-Corp.,* 712 F.2d 154, 160 (5th Cir.1983). Hence, releases signed by seaman are given careful scrutiny by the court. *Halliburton v. Ocean Drilling & Exploration Co.,* 620 F.2d 444, 445 (5th Cir.1980). "[T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Garrett,* 317 U.S. at 248, 63 S.Ct. at 252 (followed in *Gueho v. Diamond M. Drilling Co.,* 524 F.2d 986, 987 (5th Cir.1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976).

At trial, Gauthier advanced three reasons why the settlement agreement was invalid and the consent decree did not preclude his action. Gauthier contended the settlement agreement was based on a mutual mistake of fact because both parties accepted the prognosis of Continental's physician that Gauthier would be able to resume his diving career. Gauthier also contended the release was invalid because it was based on inadequate consideration. Finally, Gauthier contended that Continental's president promised him he could return to work as a diver and that Continental failed to honor its agreement.

Continental argued that the state court consent judgment was valid and binding because Gauthier understood that his medical prognosis was uncertain and he accepted the risk that he would not be able to resume his diving job.

■ To uphold the jury's verdict, we need only consider Gauthier's claim that the settlement and consent judgment was based in part on Continental's promise of continued employment as a diver. We do not consider his other claims.

---

**2.** For our purposes, the District of Columbia Court of Appeals is a state court. *See* 28 U.S.C. § 1257 (1986); *see also Feldman,* 460 U.S. at 463–64, 103 S.Ct. at 1305.

Gauthier testified that before the settlement was reached, George Williams, president of Continental, assured him that Continental would permit him to return to his diving duties. Gauthier testified that because Williams was unable to obtain the insurer's consent, Continental would not allow him to resume his diving duties. Gauthier testified that if he had known that Continental would not allow him to dive he would not have agreed to the settlement.

George Williams testified that before the settlement agreement was bound, he and Gauthier discussed the risk of further injury to Gauthier if he resumed diving. Williams told Gauthier, however, that if he wanted to take the risk, Continental "would back him up." Williams conceded that before the settlement he wanted Gauthier to return to diving because Gauthier was one of the best divers in the area. Williams further conceded that he did not permit Gauthier to dive after the settlement. Williams gave two reasons for this refusal: Following the decline in offshore drilling activity, Gauthier was overqualified for the available work; Continental's liability insurer expressed doubt about its willingness to provide coverage if Gauthier were allowed to resume his diving duties.

*Gueho v. Diamond M. Drilling Co.*, 524 F.2d 986 (5th Cir.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976), controls our decision in the instant case. Gueho was an injured seaman who entered into a settlement agreement with his employer. The settlement was approved by a United States district judge. A representative of the employer's insurer orally assured Gueho that he could continue his employment. After the settlement, Gueho's employer terminated his employment and Gueho filed an action to set aside the settlement. The court vacated the settlement and entered a money judgment for Gueho. We affirmed on grounds that the record supported the court's conclusion that "the defendant did not bear its burden of demonstrating that the seaman fully appreciated the consequences of the settlement." *Id.* at 987.

As in *Gueho*, the question for decision in this case narrows to whether the record evidence supports the implicit finding of the jury that Gauthier entered into the settlement and consent decree under the erroneous impression that Continental would permit him to return to his diving duties. *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir.1969) (en banc).

As demonstrated by the above discussion of the testimony of Gauthier and Williams, the record evidence amply supports a finding that Continental promised Gauthier that he could return to work as a diver and that without the prospect of continued employment Gauthier would not have agreed to the settlement.

**D.**

Continental contends the district court's jury charge on future damages was unduly complicated and confusing. We disagree. The charge fairly stated the law in terms the jury could understand. *See McNeese v. Reading & Bates Drilling Co.*, 749 F.2d 270, 274 (5th Cir.1985); *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir.1979).

**III.**

In summary, we conclude that: (1) the *Rooker-Feldman* doctrine does not apply to deprive the federal court of jurisdiction to consider Gauthier's attack on the state court judgment; (2) the district court correctly applied the general maritime law to determine the effect of the state court consent judgment; (3) applying the general maritime law to this attack on a seaman's release, the record evidence amply supports the jury's verdict and the district court's judgment on the verdict annulling the earlier settlement and consent decree; and (4) the district court's jury charge was completely adequate. For these reasons, the judgment of the district court is affirmed.

AFFIRMED.