**LOUISIANA SEAFOOD MANAGEMENT, et al.**

v.

**FOSTER, et al.**

**No. Civ.A. 96–106.**

United States District Court, E.D. Louisiana.

April 20, 1999.

Paul R. Baier, Baton Rouge, LA, Robert A. Barnett, Guste, Barnett & Shushan, LLP, New Orleans, LA, for Louisiana Seafood Management Council, Inc., John E Thompson, Eddie Lejuine, Matthew Reagan, Clara Gerica, Todd Stipelcovich, Barry Schaferkotter, David A Mills, Christon Cheramie, Peter Steven Hotoph, Eugene Hickman, Chad Lay, Lindberg Santini, Ned F. Malley, Jr, Barisich Inc., plaintiffs.

Judith Ruth Atkinson, Thomas E. Balhoff, Roedel, Parsons, Koch, Frost, Balhoff & McCollister, Baton Rouge, LA, for Coastal Conservation, dba, Gulf Coast Conservation Association of Louisiana, intervenor-plaintiff.

Edmond W. Shows, Shows, Cohn & Cali, Baton Rouge, LA, Frederick Coller Whitrock, Louisiana Department of Justice, Public Protection Division, Baton Rouge, LA, Thomas Michael Landrum, Donald E. Puckett, Laura Heap, Louisiana Department of Wildlife and Fisheries, Baton Rouge, LA, Ronnie J. Berthelot, Shows, Cali & Burns, Baton Rouge, LA, for Murphy J. Foster, Jr., Richard P. Ieyoub, Attorney General, Joe L. Herring, Peter Vujnovich, John P. Schneider, Perry Gisclair, Daniel Babin, Joseph P. Cormier, Glynn Carver, Wynton Vidrine, Louisiana Wildlife and Fisheries Commission, Louisiana Department Wildlife and Fisheries, defendants.

Edmond W. Shows, Shows, Cohn & Cali, Baton Rouge, LA, Frederick Coller Whitrock, Louisiana Department of Justice, Public Protection Division, Baton Rouge, LA, Donald E. Puckett, Laura Heap, Louisiana Department of Wildlife and Fisheries, Baton Rouge, LA, Ronnie J. Berthelot, Shows, Cali & Burns, Baton Rouge, LA, for Charles—Clark, defendant.

PORTEOUS, District Judge.

This matter came for hearing upon motions previously set for hearing by both the plaintiffs and the defendants, seeking this Court to act in this case following a definitive ruling by the state courts of Louisiana on a state action which had formerly required this Court to enter an abstention order. The plaintiffs have come forward requesting that this Court remove the stay currently imposed on this federal action so that the merits of this case can be addressed. The defendants have countered, claiming in their motion to dismiss that if the Court was to lift the stay, then the stay should be lifted only to dismiss this case pursuant to the preclusive effect of a state court judgment. Oral arguments were entertained, after which the Court took this matter under submission. The Court, having reviewed the record, the applicable law, and the memoranda of the parties, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. FACTUAL BACKGROUND

This suit involves a challenge by the commercial fisherman to Act 1316 of the 1995 Louisiana Regular Session (hereinafter, the "'gill-net ban' law"). The Act, after a two-year phase-out period, banned entanglement nets (hereinafter, "gill-nets") as a form of gear for catching fish in salt water areas of Louisiana. This ban ap-

plies in most instances, although gill-nets may still be used to catch mullet and pompano, as well as certain other species under certain circumstances.

The history of this Act and its effects have been well chronicled in the records of this federal court and in those of the state courts of Louisiana. This Court will not reiterate the history at this time. Furthermore, the convoluted procedural history and facts of this case will not be elaborated upon any more than necessary.

Basically, certain named plaintiffs filed suit in a state court of Louisiana on August 14, 1995 seeking declaratory and injunctive relief to block the implementation of the "gill-net ban" law. These plaintiffs represented that they were a "group of licensed commercial saltwater fisherman, their associations, allied commercial seafood marketing interests, wholesalers, retailers, restauranteurs, and seafood consumers." Moreover, plaintiffs prayed for certification of this suit as a class action.[1] The plaintiffs made various federal constitutional and state law arguments against the "gill-net ban" law. The plaintiffs' request for a preliminary injunction was denied by the state court in September of 1995.

Subsequent to the ruling of the state court on the preliminary injunction request, this suit was filed in this federal Court on January 11, 1996. Louisiana Seafood Management Council was listed as the lead plaintiff in the federal suit as well as the state court suit. Steve Hotoph was also listed as a named plaintiff in both suits. The other named plaintiffs in the federal suit all appear to have some connection with the named plaintiffs in the state court suit, either as probable members of the certified state class or as members or officers of certain commercial fisherman associations named in the first suit. The legal issue of whether these plaintiffs can be seen as the same group (*i.e.,* "iden-

tity of parties") will be discussed at length later.

After the federal suit was initiated, the state court held a hearing on plaintiffs' request for a permanent injunction on February 27, 1996. While this Court had already addressed some of the merits of this case after holding its own preliminary injunction hearing, another hearing was scheduled to take place in this Court. This hearing was to occur before the state court had a chance to rule on the permanent injunction request. Basing its decision to stay the federal proceedings on the *Pullman* Abstention Doctrine, this Court stated as follows:

> There is no reason for the Court to believe that abstention in this case will cause any of the parties undue delay or expense. In fact, this Court believes that it may be a waste of judicial and counsel's resources to conduct another permanent injunction trial calling substantially the same witnesses and debating substantially the same issues when at any time the state court may render a decision making the entire trial moot.

*Louisiana Seafood Mngt. Council, Inc., et al. v. Foster, et al.,* 926 F.Supp. 579, 582 (E.D.La.1996). Accordingly, this Court abstained so that the state suit could proceed alone.

This Court's abstention order was prior to the state court's certification of the plaintiffs' class. However, as this Court noted, "[p]laintiffs, in both the state and federal proceedings, have filed motions to certify a class of commercial fishermen. Plaintiffs' counsel has conceded that certification of the requested state class would encompass the proposed federal class." *Id.* at 580. The state court appeared to recognize a class on May 22, 1996 in its written reasons for judgment. The state court applied its order to "the commercial fisherman who were either licensed or per-

---

1. The Louisiana state court eventually certified the class as "commercial fisherman who were either licensed or permitted to fish com-

mercially when Act 1316 went into effect" in the court's judgment dated February 18, 1997.

mitted to fish commercially when Act 1316 went into effect." The judgment of February 18, 1997 makes it definitive that a class action was in fact certified whereby the state court ordered that "the commercial fisherman who were either licensed or permitted to fish commercially when Act 1316 went into effect be certified as a class." Correspondingly, the federal plaintiffs prayed for class certification in the federal suit, requesting that they be allowed to sue "on behalf of all persons similarly engaged in commercial fishing in the Exclusive Economic Zone of the United States, adjacent to the State of Louisiana waters." *See* Doc. # 1. After having examined the parties and having considered the above-mentioned concession by plaintiffs' counsel, the Court does believe that the federal plaintiffs were included in the class as it was defined in state court. The only questions that remain are whether the federal plaintiffs can be seen as having *de facto* opted out of the state suit and/or whether they are sufficiently related to the state plaintiffs so that they can be seen as having the necessary "identity of parties" for res judicata purposes.

Moreover, after this Court stayed the federal proceedings, the state court suit continued, at various stages (pursuant to numerous motions and appeals), until the Louisiana Supreme Court denied plaintiffs' final writ application on January 29, 1999. The named plaintiffs in the state court suit chose to fully and completely litigate all of their claims in the state court forum. Plaintiffs never purported to reserve any federal challenges to the Act for the federal court suit. The plaintiffs have succeeded on a few of their challenges to Act 1316; however, the Act for the most part remains intact. Besides their request to this Court for relief, the plaintiffs' only other available avenue is to seek review from the United States Supreme Court. The Court has no knowledge of whether or not this has been done.

While the named federal plaintiffs attempted to resume their suit in this Court several times during the pendency of the state court suit, this Court maintained its abstention stance in deference to the state court proceedings. In fact, on August 9, 1996, after the original state court judgment was handed down, this Court even dissolved the preliminary injunction it had issued six months earlier (in order to accommodate the state court ruling). *See* Doc. # 41. As this Court viewed the situation, the interests of the commercial fisherman were being fully addressed at the state court level. There was no need for this Court to interfere. The state court dealt with the challenge to Act 1316 in the way that the plaintiffs presented it to them—as a challenge on behalf of all the aggrieved commercial fisherman. That class of people is the same class that the federal plaintiffs wish to represent (which earlier necessitated this Court's abstention order). The decision of the state court as to whether to uphold or strike down Act 1316 applied to all commercial fisherman (especially as evidence by the class certification), since the decision necessarily involves all commercial fisherman being treated exactly the same, whether they are party to a particular lawsuit or not.

The named federal plaintiffs assert that those of them not named in the state court suit should be allowed to have their day in federal court. They maintain that they should not be bound by an action that they *de facto* opted out of by filing their own federal suit. Those plaintiffs wish to present their arguments to this federal court and have it rule on Act 1316. They claim to have chosen this forum, not that of the state court.

However, the defendants claim that the federal suit is precluded by the *England* doctrine and the doctrine of "res judicata." They insist that these issues were fully and fairly litigated in state court (without any reservations), and the state court made a ruling. Defendants assert that the named federal plaintiffs fall within the class of people represented in the state court class action. They claim that any

further adjudication of this federal action will merely involve relitigating issues already decided, with this Court hearing the same evidence, the same witnesses, and the same attorneys as were employed in the state suit. In fact, defendants point to the fact that the federal plaintiffs have indicated a preference to submit the entire state record to this Court for it to make a decision, in lieu of new and/or additional evidence or testimony. Defendants assert that this Court is not a court of appeals for the state courts of Louisiana. Therefore, they claim that the decision of the state court should apply to all commercial fisherman (including the named federal plaintiffs), and res judicata should bar the federal suit.

## II. LEGAL ANALYSIS

### A. *The England Doctrine*

■ In *England*, the Supreme Court explicitly held that "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks review of the state decision in the [U.S. Supreme Court]—he has elected to forgo his right to return to the [federal] District Court." *England*, 375 U.S. at 419, 84 S.Ct. 461. That case involved plaintiffs who sued first in a federal district court, but were then remitted by that court to a state court on abstention grounds for the purposes of resolving or clarifying an issue of state law. Although not applied to the plaintiffs in the *England* suit (based on principles of equity and reliance), the rule announced by the Supreme Court was that, in the future, when plaintiffs, subsequent to a final adjudication by the state court, request to have their federal claims relitigated in the federal district court,

having already freely sought a "complete and final adjudication" of all their rights in state court, the federal court should deny such a rehearing. *Id.;*[2] *see also Fuller Company v. Ramon I. Gil, Inc.*, 782 F.2d 306, 312 (1st Cir.1986) ("*England* does not afford a litigant two bites at the apple. Where ... a litigant has raised its federal claim in a state court, it may not subsequently relitigate the same claim in a federal court without doing violence to well-settled principles of finality and repose.").

■ However, *England* does provide a way for a plaintiff to avoid having its federal claim determined by the state court in these instances. To evade the preclusive effects of the state court judgment, a plaintiff wishing to preserve his federal claims must: 1) "inform the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor*," *England*, 375 U.S. at 421, 84 S.Ct. 461 (citing *Government & Civic Employees Organizing Comm., CIO v. Windsor*, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957) (holding that a party does not have to litigate his federal claims in state court when challenging the applicability of a state statute, but only that he must inform the state court what his federal claims are, so that the state statute may be construed "in light of" those claims); and, 2) desist from litigating his federal claims "freely and without reservation" in state court, *England*, 375 U.S. at 419, 84 S.Ct. 461. *See also United Parcel Service, Inc. v. California Public Utilities Comm.*, 77 F.3d 1178, 1183 (9th Cir.1996). As the Supreme Court in *England* states, "[t]here are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional

---

**2.** The Supreme Court in *England* stated further;

[W]e no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the

District Court. Such a rule would not only countenance an unnecessary increase in the length and cost of the litigation; it would also be a potential source of friction between the state and federal judiciaries.

375 U.S. at 419, 84 S.Ct. 461.

claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." 375 U.S. at 415, 84 S.Ct. 461.[3] This Court notes that the abstention doctrine is not in conflict with the statement above, and does not imply a disregard for the primacy of the federal judiciary in deciding questions of federal law. *Id.* at 415–416, 84 S.Ct. 461.

In the "Gill-net" case before the Louisiana state court, the plaintiffs neither made the appropriate reservations nor refrained from "fully and completely" litigating all of their claims (including their federal claims). The plaintiffs before the Louisiana state court were not compelled to argue their entire case there, but they freely chose to do so. If the pure *England* question was the only issue faced by this Court, the plaintiffs' claims could be dismissed without necessitating much more discussion by this Court. However, this Court must proceed because of this suit's more complex procedural and factual record (particularly because of the issue of identity between the state and federal court plaintiffs).

## B. *Rankin and Pollard: Identifying the Plaintiffs*

### (i.) *Rankin*

In *Rankin v. State of Florida*, 418 F.2d 482 (5th Cir.1969), the United States Court of Appeals for the Fifth Circuit reviewed a dismissal by the lower federal district court of a class action challenging the constitutionality of a Florida statute prohibiting political contributions by persons licensed by the state to sell alcoholic beverages. Pursuant to *England*, the Fifth Circuit upheld the dismissal by the district court on the grounds that the case had already been presented, litigated and decided in the Florida state courts.

On December 6, 1966, a class action on behalf of all persons licensed by the State of Florida to sell intoxicating beverages was brought in a Florida Circuit Court against the Attorney General and the Secretary of State of Florida to declare that this particular Florida statute was unconstitutional under Florida's state constitution and/or under the Fourteenth Amendment to the United States Constitution. *Id.* at 483. Subsequently, a declaratory judgment action was commenced in federal district court on December 30, 1966, seeking to have the Florida statute be declared violative of the Fourteenth Amendment of the U.S. Constitution. *Id.* at 483–484. The federal complaint was later amended into a class action on behalf of all holders of licenses issued by the State of Florida permitting the sale of intoxicating beverages (both the state and federal suits proposed the same class of plaintiffs). *Id.* at 484. While the named plaintiffs in the two suits were different, they were both members of the same class and were represented by the same attorneys. *Id.* Under the facts of this case, the Fifth Circuit did not seem to believe that the federal plaintiff avoided the effects of the state court judgment by any *de facto* opting out of the state class action through the commencement of the federal suit.

The two suits at issue were brought almost simultaneously in both state and federal courts by different members of the same class. The federal district court and the Fifth Circuit both viewed these plaintiffs as acting in concert. The state action was litigated first and the plaintiff there argued both the state and federal constitutional issues without any reservation. The decision of the state trial court was favorable to the state court plaintiff, so the plaintiff in the federal action then moved to dismiss the federal action. However, that motion was withdrawn when it became apparent that the state decision was

---

**3.** The court in *England* concluded the following: "Thus in cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the

District Court, a litigant may not be unwillingly deprived of that determination." 375 U.S. at 417, 84 S.Ct. 461 (footnote omitted).

to be appealed (*i.e.*, the federal plaintiff was trying to preserve his second bite at the apple). When the state plaintiff lost in the Florida Supreme Court, the federal plaintiff attempted to seek a readjudication on the merits in federal district court. The Fifth Circuit recognized that at this point the situation became similar to abstention cases where the parties file in federal court and, when sent to state court, litigate the federal issues without reservation, and then seek to return to district court after the state court disposes of all the issues presented.[4] Because of this recognition, the Fifth Circuit found that the *England* doctrine was properly applied to this situation.

Upholding the district court's well-placed reliance on *England,* the Fifth Circuit affirmed the following findings:

> (1) that the plaintiffs in the state and federal actions, being members of the same class and being represented by the same counsel, were identical; (2) that the federal constitutional issues were presented and argued without reservation before and decided by the Florida courts; and (3) that by pursuing their remedy unreservedly in state court, the plaintiffs elected to be bound by the state court on the federal constitutional issues, and that abstention by the federal courts is in order in such a case. . . .

*Rankin,* 418 F.2d at 484 (citing *England,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440; and, *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)). Applying the doctrine of res judicata, which *England* "infused into the arena of absten-

tion," the Fifth Circuit held that, "the plaintiff in the federal class is therefore barred from litigating further in federal court by the final determination of the state class action, since the parties and issues were identical in substance, if not form." *Rankin,* 418 F.2d at 485–486 (citing *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199 (5th Cir.1968) (noting that the "reality" or "substance" of the suits, not the form, should be controlling for res judicata purposes)).[5]

### (ii.) Pollard

Furthermore, the Fifth Circuit later addressed a somewhat similar situation in *Pollard v. Cockrell,* 578 F.2d 1002 (5th Cir.1978). In *Pollard* the Fifth Circuit, ruling that res judicata should not have been applied under the facts of the case and the *England* doctrine, distinguished its holding in *Rankin* by noting that in *Pollard* "the state and federal cases were brought by different plaintiffs, none of whom sued in a representative capacity." 578 F.2d at 1008. The Fifth Circuit held that *Pollard* was not controlled by *Rankin,* but by *E.B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir.1970). In *Elliott,* the court held that two named plaintiffs who were in no way involved in a previous state action challenging a local ordinance, "either as named parties or as members of a class being represented ... are not bound by these previous adjudications." 425 F.2d at 1148.

■ Moreover, the Fifth Circuit in *Pollard* also addressed the defendants' argu-

---

**4.** The Fifth Circuit noted that, although the district court below invoked the abstention doctrine as the basis for dismissal, the situation presented in *Rankin* did not "fall neatly into the [a]bstention mold." 418 F.2d at 485. However, the Fifth Circuit held that these circumstances were sufficiently similar to those of the abstention cases to warrant the application of *England. Id.*

**5.** The doctrine of res judicata and its application under Louisiana law to the "Gill-net" case is discussed *infra,* pp. 540–545. The

Fifth Circuit in *Rankin* noted that under the doctrine of res judicata, a prior valid judgment operates as an absolute bar in another case on the same cause of action between the same parties and their privies. 418 F.2d at 486. Apparently, the Fifth Circuit believed that the parties in *Rankin* were privies to one another considering their aligned interests in having the statute declared unconstitutional, their common prayers for the certification of the exact same class, their mutual inclusion within the scope of the defined class, and their use of the same attorneys.

ment that privity existed between the plaintiffs in both the state and federal suits through the doctrine of "virtual representation." The Fifth Circuit has recognized that " '[u]nder the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.' " *Id.* at 1008 (quoting *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.1975)).[6] In holding that the relationship between the state and federal plaintiffs in *Pollard* did not amount to the "close alignment of interests necessary under the virtual representation doctrine," the Fifth Circuit found as follows:

> the state court plaintiffs were in no sense legally accountable to the federal court plaintiffs; they shared only an abstract interest in enjoining enforcement of the ordinance. The [state court] plaintiffs sued in their individual capacities and not as representatives of a judicially certified class.

*Id.* at 1009. Moreover, the court held that representation by the same attorneys cannot furnish in itself the requisite alignment of interests because the substantial decision making authority with regards to the

case lies with the client and not the lawyer. *Id.*

As the Court has stated above, the *England* inquiry is tied into the doctrine of res judicata. In order to dismiss a federal action on the basis of *England,* the court must determine that the doctrine of res judicata properly applies to the situation at hand. Therefore, this court must now examine Louisiana's law on res judicata. *See Migra,* 465 U.S. at 84, 104 S.Ct. 892; *Allen,* 449 U.S. at 99, 101 S.Ct. 411.[7]

## C. *Res Judicata*

■ Res judicata is an issue preclusion device found both in federal law and state law. According to LSA–R.S. 13:4231, a "valid and final judgment is conclusive between the same parties" if certain requirements are met. Louisiana's doctrine of res judicata bars relitigation of both claims and issues arising out of the same factual circumstances if there has been a valid final judgment. *See Duffy v. Si–Sifh Corp.,* 726 So.2d 438, 440 (La.App. 4 Cir. 1999) (citing *Ansalve v. State Farm Mutual Automobile Insurance Co.,* 669 So.2d 1328, 1333 (La.App. 4 Cir.1996)). The res judicata statute, La. R.S. 13:4231, was amended effective January 1, 1991,[8] to provide as follows:

---

**6.** Because this Court is examining the preclusive effects of a Louisiana state court decision, this Court is bound to extend preclusive effect to the Louisiana state proceedings to the same extent that the state courts of Louisiana would do so. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 84, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980). This means that this Court must apply the doctrine of res judicata as delineated by Louisiana law (discussed infra, pp. 540–545). The doctrine of "virtual representation" has been discussed by Louisiana state courts in the context of res judicata; however, most of the discussion is couched under the term "identity of parties" (which was a requirement under the old Louisiana res judicata statute that most probably survived the amendment—*see Duffy v. Si–Sifh,* 726 So.2d 438, 443 (La.App. 4 Cir. 1999)) Both terms examine privity and the alignment of interests in determining whether

res judicata can be applied to plaintiffs not formally named in the first suit. This Court believes that since the Louisiana res judicata statute (La. R. S.13:4231) has been amended recently to more closely resemble the federal res judicata doctrine, the doctrine of "virtual representation" would most probably be viewed as a suitable doctrine by the state courts of Louisiana. Nonetheless, this Court cannot discern a great deal of difference between the "virtual representation" doctrine and the interpretation of the requirement of "identity of parties" by the Louisiana courts (especially considering the "strict construction" of the virtual representation doctrine employed by most jurisdictions).

**7.** *See supra,* p. 540, footnote 6.

**8.** Act 521 of the 1990 regular session of the Louisiana Legislature revised Louisiana's laws pertaining to res judicata. *See Duffy,* 726 So.2d at 441.

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment;

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action;

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The amended law (as opposed to the one in existence before 1991) will apply in the "Gill-net" case because the original state court suit was filed subsequent to the effective date of the act. The prior law concerning res judicata was substantially narrower than the prevailing federal law; actions were formerly barred if "the plaintiff sought the same relief based on the same cause or grounds." *Duffy*, 726 So.2d at 442 (citing *Morris v. Haas*, 659 So.2d 804, 810 (La.App. 5 Cir.1995)). The amendment constitutes a substantial change in the law. *Id.* According to the Official Comments to LSA–R.S. 13:4231, as well as the interpretation of the Louisiana Supreme Court, the new Louisiana law provides a broader application of res judicata, the purpose, now more aligned with that of federal law, being to foster judicial efficiency and to promote the final resolution of disputes by preventing needless litigation. *See Duffy*, 726 So.2d at 442

(citing *Terrebonne Fuel & Lube, Inc. v. Placid Refining Company*, 666 So.2d 624, 631 (La.1996)); *see also Fine v. Regional Transit Authority*, 676 So.2d 1134, 1136 (La.App. 4 Cir.1996).

The court in *Duffy* quoted an extensive passage from a 1996 Louisiana Supreme Court opinion, which delineated Louisiana's current stance on the doctrine of res judicata. This Court will also set forth that reasoning, which starts by explaining the purposes behind the res judicata doctrine:

As explained by former Chief Justice John A. Dixon, Jr.,

It is implicit in the concept of a judicial system that controversies be finally resolved so that parties may enjoy their rights and so that conflicting legal obligations may not be imposed on an individual; litigation must end at some point. Precluding relitigation prevents inefficient use of the courts' resources, reduces the possibility of harassment through vexatious suits, and helps maintain respect for the judicial proceeds [sic] by guarding against inconsistent decisions.

Dixon, Booksh, Zimmering, *Res Judicata in Louisiana since Hope v. Madison*, 51 Tul.L.Rev. 611 (1977), footnotes in quotation omitted.

Under common law, the doctrine of res judicata focuses on "extinguishment" of the cause of action. A plaintiff's cause of action "merges" into a judgment for plaintiff, whereas a judgment for defendant "bars" relitigation of the cause of action, which is considered to be extinguished. "Since the cause of action is extinguished by the lawsuit, res judicata precludes litigation of not only that which was pleaded but also any issue which might have been pleaded with regard to that cause of action."

Arbour, *The Louisiana Concept of Res Judicata*, 34 La.L.Rev. 763, 764 (1974).

Conversely, the original Louisiana doctrine of res judicata was based on a

presumption of correctness rather than an extinguishment of the cause of action. *Id.* A decided case precluded a second suit only if it involved the same parties, the same cause and the same object of demand as the prior suit. *Id.* However, under La.R.S. 13:4231, as amended in 1990 effective January 1, 1991,

> a second action would be barred because it arises out of the occurrence which was the subject matter of the prior litigation. The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. This serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence.

See Comments—1990, La.R.S. 13:4231, emphasis added.

*Terrebonne Fuel & Lube,* 666 So.2d at 631–632. It is apparent that Louisiana now follows the broader "transaction or occurrence" standard for res judicata, based on the idea of "extinguishment" of the cause of action. However, there is nothing in the amended law that suggests that "identity of parties" is no longer a requirement for a finding of res judicata. *See Morris,* 659 So.2d at 810; *see also Duffy,* 726 So.2d at 443.[9] Therefore, this Court must examine the structure of the commercial fisherman plaintiff class at the state court level and determine whether there is sufficient "identity of parties" so that res judicata may properly apply to the plaintiffs in the current federal suit.

**9.** While "identity of parties" still appears to be a requirement, it is probable that the element is gravitating toward the idea of "virtual representation" that exists in federal law. The Court notes that the Louisiana res judicata statute as amended is now more closely aligned with federal law. While virtual representation is not very different from "identity of parties," it may allow a little bit more latitude, particularly in exceptional circumstances such as *Duffy.*

### D. *Identifying the Plaintiffs under Louisiana Law*

#### *(i.) Duffy*

In *Duffy,* the Louisiana Fourth Circuit Court of Appeals (hereinafter, "La. 4th Circuit") maintained an exception of res judicata in dismissing a class action. 726 So.2d 438. The *Duffy* case involved a class of plaintiffs who filed suit on behalf of themselves and those similarly situated, described as those known persons and entities who at that time resided in the United States of America and who purchased in the state of Louisiana funeral policies that were marketed and sold by Si–Sifh (defendant). *Id.* at 439. The class remaining for consideration as of the time this matter was decided in 1999 was defined as "a class of living heirs and/or beneficiaries of deceased insureds under burial insurance policies allegedly not honored by Si–Sifh, for which plaintiffs sought monetary relief." *Id.*

The defendant (Si–Sifh) filed an exception of res judicata with the La. 4th Circuit, claiming that an identical class action suit previously filed in Jefferson Parish already had been dismissed by the Twenty–Fourth Judicial District Court (hereinafter, "24th JDC"). *Id.* at 440. The 24th JDC dismissed the case pursuant to a judgment maintaining a peremptory exception of no cause of action to the plaintiffs' use of the class action device. *Id.* That judgment of the 24th JDC had been affirmed by the Louisiana Fifth Circuit Court of Appeal. *Id.* In light of the procedural history of this suit, the La. 4th Circuit engaged in an extensive review of the applicable res judicata doctrine to see if the new case (the "second suit") was barred by the 24th JDC's decision in the first case.[10]

**10.** The "res judicata" analysis of the court in *Duffy* was discussed *supra,* pp. 540–542.

The court in *Duffy* noted that both the first suit and the second suit were brought against the same defendants and unquestionably arose out of the same transaction or occurrence. *Id.* at 442. Also, the court stated that except for the names of the proposed class representatives, and some minor amendments to the second petition, the petitions in the two cases were "virtually identical." *Id.* at 442–443. Furthermore, the court recognized specifically that the two petitions were filed by the same attorneys. *Id.* at 443. Pointing to these findings, the court concluded that there could be no real dispute that the second action "assert[ed] a cause of action which ar[ose] out of the transaction or occurrence which was the subject matter of the first action." *Id.* (quoting *Terrebonne Fuel & Lube*, 666 So.2d at 632).

The plaintiffs in *Duffy* claimed, as do the plaintiffs in the "Gill-net" case, that res judicata should not be applied because the named plaintiffs were not identically the same in both the first and second suits. *Id.* at 443. Holding that "identity of parties" remains a requirement for a finding of res judicata, the court in *Duffy* next addressed that particular issue, considering plaintiffs' argument that the first suit could not be considered to bar their actions in the second suit because none of the named plaintiffs in the second suit were named plaintiffs in the first. *Id.* (citing *Morris*, 659 So.2d at 810). Thus, the court went on to determine whether an identity of parties existed between the two cases.

The court found that "[i]dentity of parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity." *Id.* (citing *Morris*, 659 So.2d at 810; *Lastie v. Warden*, 611 So.2d 721, 723 (La.App. 4 Cir.1992)). The only requirement is that the parties be the same "in the legal sense of the word." *Id.* The court in *Duffy* found that under that definition, an identity of parties existed between the two cases. *Id.* at 443. The named plaintiffs in each case were the proposed class representatives for the exact same class of people, since the definitions of the class as alleged were identical in the two cases. *Id.* Thus, the court in *Duffy* held that the parties were the same in the legal sense of the word. *Id.*

The plaintiffs in *Duffy* concentrated on the fact that the named plaintiffs in the two suits were different, coupled with the fact that the class was never certified in the first suit. *Id.* Because the class had never been certified, plaintiffs argued, the named plaintiffs in the first suit could not be regarded as having represented the named plaintiffs in the second suit. *Id.* However, the court in *Duffy* reasoned that the plaintiffs failed to acknowledge the "reality" of the facts of the case. *Id.* The "party plaintiffs" in the first case were all the members of the defined class; the "party plaintiffs" in the second suit were the very same people. *Id.* The court found that the fact that different proposed representatives filed suit in the second case should not affect its analysis. *Id.* Thus, the court held that the "identity of parties" requirement for a class action was present.[11]

Importantly, the court in *Duffy* reasoned that "allowing the plaintiffs to relitigate the class action question in the instant case would encourage forum shopping, allowing the plaintiffs numerous 'bites' at the class action 'apple,' and frustrate the purposes of the res judicata doctrine." *Id.* (footnote omitted). The court feared that a contrary ruling would allow for the possibility that different

11. However, the court in *Duffy* noted that nothing in the decision in the first suit or in the decision of that court itself affected the rights of the individual plaintiffs who filed the second suit. *Id.* The court stated that those individual plaintiffs still had a right to assert a cause of action for their losses. *Id.* This was because the only issue substantially reached in those decisions was a finding of no cause of action to the plaintiffs' (those in both suits, who were found to be the very same people) use of the class action device. *See Id.* at 440.

"named plaintiffs" could file suit in different forums throughout the state of Louisiana until the plaintiffs finally found a forum which would certify its class action. *Id.* at 443, n. 2. Allowing for such a sequence of events, the court concluded, would not serve the purposes of judicial economy, fairness and protection of the defendants from multiple lawsuits. *Id.*

### (ii.) Cauefield

Another opinion which has some bearing on the "Gill-net" case is *Cauefield v. Fidelity Casualty Company of New York,* 378 F.2d 876 (5th Cir.1967). In *Cauefield* the Fifth Circuit, applying Louisiana law, held that under the doctrine of judicial estoppel, federal plaintiffs in a second suit were precluded from maintaining their cause of action because the same matter had already been litigated and decided in the state courts of Louisiana. The Fifth Circuit applied judicial estoppel instead of res judicata because the demand (statutorily required at that time) for "identity of parties" was seen as stricter for res judicata than it was for judicial estoppel. *Id.* at 878. This Court believes that in light of the recent amendment to the Louisianan res judicata statute (effective as of January 1, 1991, becoming much more similar to the broader federal res judicata law (applied by most jurisdictions)) and such expansive state court decisions as *Duffy,* the "identity of parties" element is now more in line with the doctrine of "virtual representation." At the very least, "identity of parties" has been expanded to include situations beyond the stricter traditional relationships which were seen as satisfying that element in the past. Nonetheless, whether this Court applies res judicata (as in *Duffy* ) or judicial estoppel (as in *Cauefield* ), the outcome would be the same.

The unusual procedural posture and factual background of *Cauefield* merits close inspection. A total of forty-one relatives of persons buried in a cemetery brought numerous actions in Louisiana state courts

for desecration as a result of cleaning operations in the cemetery. *Id.* at 877. One of those suits, filed by an individual plaintiff (Sid Thomas), was commenced and tried before a jury (hereinafter, the "Thomas case"). *Id.* In a trial lasting nine days, all interested relatives testified, and the two federal plaintiffs in *Cauefield* were active participating witnesses. *Id.* The jury found that there had been no desecration. *Id.* The burden of proof here was significant in that the plaintiff in the Thomas case needed to show only that any part of the cemetery had been desecrated. *Id.* at 878. Therefore, it would have been sufficient for the jury to have accepted the testimony of any witness indicating that any grave in the cemetery had been desecrated. *Id.* The federal *Cauefield* matter had even been continued indefinitely until after the completion of the state court's Thomas case. *Id.* at 877. The Fifth Circuit stated that "[i]t thus appears that the Thomas case tacitly was intended to resolve all the numerous identical claims that the cemetery had been desecrated." *Id.*

Moreover, the federal plaintiffs conceded that the issues previously determined by the state court would be the same issues they would be litigating in the federal court. *Id.* at 878. The plaintiffs admitted as well that the "evidence and testimony they would be able to produce would not differ in the least from that which they themselves and the other relatives presented and which was passed on in the Thomas case." *Id.* Therefore, the federal plaintiffs would be merely relitigating a case that had already been tried and rejected by a Louisiana state court. Also, the Fifth Circuit noted as significant that all the state court plaintiffs, as well as the federal plaintiffs, were represented by the same attorneys. *Id.* at 877.

The situation presented in *Cauefield* is very similar to our state court class action situation. In *Cauefield,* there was a group of individuals with identical interests who acted in concert to fight a particular perceived injury. The battle commenced in

state court, with one plaintiff leading a coordinated effort against the defendants. Everything was brought to the state court battle—nothing was saved for a later time. Another fight (*i.e.*, the federal one) was put on hold while the group focused on the state court battle. Once the battle was lost, the federal representatives attempted to lead the group on another campaign. However, the Fifth Circuit in *Cauefield* held that the state court battle was the war, and the war was lost. This group could fight no more. The court in *Cauefield* punctuated that position by stating, "absolutely nothing would be gained were [the federal plaintiffs] permitted to pursue their action in the federal court." *Id.* at 879.[12]

This court believes that the "Gill-net" matter presents sufficiently analogous circumstances to the cases analyzed above. The battle against Act 1316 should not be fought twice by our group sharing "identity of parties." Furthermore, there is another doctrine which suggests that this federal Court should refrain from rehearing the "Gill-net" case. This doctrine is discussed below.

### E. *Rooker–Feldman and Full Faith and Credit*

■ The *Rooker–Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (the jurisdiction of the federal district court "is strictly original"); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 & 482, 103 S.Ct. 1303, 1311 & 1315, 75 L.Ed.2d 206 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *see also, e.g. Davis v. Bayless*, 70 F.3d 367, 375–376 (5th Cir. 1995) ("When issues raised in a federal court are 'inextricably intertwined' with a

state judgment and the court is 'in essence being called upon to review the state-court decision,' the court lacks subject matter jurisdiction to conduct such a review.") As the Fifth Circuit states in *Liedtke v. State Bar of Texas,*

> Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court.

18 F.3d 315, 317 (5th Cir.1994) (footnotes omitted) (citing *Rooker* and *Feldman*). Furthermore, the court in *Liedtke* explained that "absent a specific delegation 'federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s].'" *Id.* (quoting *Kimball v. Florida Bar,* 632 F.2d 1283, 1284 (5th Cir.1980) (footnote omitted)).

The *Rooker–Feldman* doctrine is yet another principal mitigating in favor of dismissal of the federal "Gill-net" suit. The plaintiffs have stated that they would be willing to submit the entire state record to this Court in lieu new and/or additional evidence or testimony. Viewed in light of the legal analysis the Court has gone through so far, it seems to this Court that it would be violative of the principles behind the *Rooker–Feldman* doctrine if the Court did not dismiss the federal "Gill-net" suit under the doctrine of res judicata. The plaintiffs should have, and did, appeal the lower state court rulings through the appropriate channels. Since the Louisiana Supreme Court has already given its final word, the only possibility remaining now for relief exists with the United States Supreme Court.

---

**12.** This Court reiterates that the group (those from both the state and federal suits) must be in privity with one another—there must be an "identity of parties."

To support further this Court's application of the Louisiana res judicata doctrine to the "Gill-net" case, the Court cites to *Gauthier v. Continental Diving Services, Inc.,* 831 F.2d 559, 561 (5th Cir.1987), which held as follows:

> *Rooker–Feldman* casts in jurisdictional terms a rule that is very close if not identical to the more familiar principle that a federal court must give full faith and credit to a state court judgment. *See* 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4469 at 664–68 (1981). To satisfy the full faith and credit requirement, a federal court must give the same deference to a state court judgment that a court of the rendering state would give it. 28 U.S.C. § 1738 (1986); *see also A.L.T. Corp. v. Small Business Admin.,* 801 F.2d 1451, 1456 (5th Cir.1986).

However, a federal could should not give greater deference to a state court judgment than a court of that state would give. *Id.* Therefore, *Gauthier,* when read in conjunction with *Migra* and *Allen* (*see* p. 540, footnote 6), validates the Court's earlier employment of the Louisiana res judicata doctrine. This Court does not believe that a Louisiana state court would permit this group of named federal plaintiffs to proceed in state court with an identical suit. Therefore, this Court should not allow it.

### F. *Conclusion*

■ Since all remedies within the Louisiana state court system have been exhausted, the Court believes that it is appropriate to lift the stay previous placed on this matter pursuant to the Pullman abstention doctrine. However, the Court finds that the final decision of the Louisiana state court precludes the federal action from proceeding under the doctrine of res judicata. The named federal plaintiffs were included as members in the certified class in state court and the proposed federal class was encompassed by the state class. The named federal plaintiffs, through their counsel (who were also counsel in the state court suit), have even suggested that this Court simply review the state court record when it is time to reach a decision. There is no substantially new or different evidence sought to be introduced in the federal trial. This Court holds that the commercial fisherman have already challenged Act 1316 in state court. The interests of all commercial fisherman were aligned in that suit (the fate of all the commercial fisherman was on the line). The situation presented involves a sufficient "identity of parties." Moreover, there was no reservation of the federal claims made in the state court suit. The plaintiffs there "fully and completely" litigated their claims in state court, pursuant to their free will. The reality of the "Gill-net" suit is that the commercial fisherman wanted to challenge Act 1316—that challenge was heard and decided. This Court is prohibited from acting as an appellate court for Louisiana state court suits. Under *England, Rankin, Duffy,* and *Cauefield* (among others), the federal action should be, and is, dismissed.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion to lift the stay is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss is **GRANTED, DISMISSING** the claims of the plaintiffs **WITH PREJUDICE.**