### In re ALTMAN NURSING, INC., Debtor.

### No. 98–31326 HDH–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 18, 2003.

Order Denying Motion to Alter or Amend, Sept. 17, 2003.

held that § 507(a)(8)(A)(ii) also contained specific tolling provisions that precluded application of equitable tolling.

Theodore J. Riney, Geary, Porter & Donovan, P.C., Addison, TX, for Gerrit M. Pronske and Gerrit M. Pronske, P.C.

Jeffrey R. Fine, Hughes & Luce, L.L.P., Dallas, TX, for Clay Capital Corporation and Avi Dan.

## *MEMORANDUM OPINION*

HARLIN D. HALE, Bankruptcy Judge.

This matter is before this Court on the Provisional Notice of Transfer of Claim ("Notice") filed by Gerrit M. Pronske and Gerrit M. Pronske, P.C. pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure. Clay Capital Corporation ("CCC") filed a Response and Objec-

tion to the Notice filed by Pronske in which it objected to the transfer of its claim to Pronske. A hearing was held on June 26, 2003.

### Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### Background

On or about April 3, 1998, Clay Capital Corporation ("CCC") filed its Proof of Claim in the bankruptcy case of Altman Nursing, Inc. (the "Debtor") in the amount of $1,014,225 (the "Claim"). Pronske represented CCC in connection with its claim and interests in this bankruptcy case, which included filing CCC's proof of claim. The fees billed by Pronske to CCC during the course of his representation totaled $24,358.83. CCC paid $17,500 of the fees but failed to pay the remaining $6,858.83. These fees remained unpaid for several years despite numerous letters sent by Pronske to CCC requesting payment.

On February 20, 2002, Pronske filed a lawsuit against CCC, styled *Gerrit M. Pronske and Gerrit M. Pronske, P.C. vs. Clay Capital Corporation,* Cause No. 02–02335–E (the "Lawsuit"), in the County Court at Law No. 5, of Dallas County, Texas (the "State Court"). Several months later, on June 21, 2002, Pronske filed a Motion for Substituted Service, requesting an Order from the State Court to serve process of the Lawsuit by serving CCC's corporate office in New York by certified mail, or by serving CCC's president, Avi Dan ("Dan") at his known fax number. On June 22, 2002, the State Court entered the Order directing service as requested in the Motion for Substituted Service.

On July 1, 2002, prior to the service on CCC by Pronske of the Lawsuit, the Trustee in this bankruptcy case filed her Final Report and Proposed Distribution which indicated she was proposing to pay $203,229.05 on CCC's claim. On July 5, 2002, Pronske sent a letter to CCC and Dan, which letter was received by CCC and Dan, notifying them that CCC had been sued. Pronske then served the Lawsuit in the manner prescribed by the Order Substituting Service, requiring either receipt of a "green card" or an errorless fax transmission report. Both means of service prescribed by the State Court were effected: the "green card" shows proof of service to CCC's New York office, and the fax transmission report shows receipt of the 55 page fax transmission by Dan. There is no dispute in this case that CCC and Dan received service and were aware of the Lawsuit. Dan did not appear at the hearing on this matter, and CCC did not offer evidence that rebutted Pronske's evidence that service had been made.[1]

On July 22, 2002, the Texas State District Court rendered a Default Judgment against CCC in the Lawsuit in favor of Pronske in the amount of $6,858.83, plus simple interest at 10% per annum from July 22, 2002 until paid, plus attorneys' fees and expenses in the amount of $3,887.00, plus court costs in the amount of $613.94 (the "Judgment"). Pronske notified CCC of the entry of the Judgment. On August 9, 2002, the state court signed a Turnover Order directing turnover of the

---

1. CCC does assert that Pronske should have served or notified Robert Tobey (a Dallas lawyer who has, from time to time, also served as counsel for CCC and, perhaps, Dan) of the Lawsuit. However, Tobey was not at any time counsel for CCC or for Dan in any fee dispute with Pronske, and Tobey was not called as a witness for CCC or Dan to establish otherwise.

Claim (among other things) to the Dallas County Constable for disposition, and granting additional attorneys' fees to Pronske in the amount of $1,500.00 (the "Turnover Order"). CCC has not filed any pleadings with the State Court attempting to set aside the Judgment or the Turnover Order.

On September 3, 2002, the Dallas County Constable conducted a sale of the property, including the Claim, as directed by the Turnover Order and a Writ of Turnover. According to the evidence offered by Pronske, The Dallas County Constable provided notice of the sale to CCC and Dan on August 21, 2002. CCC did not call a witness or offer any evidence to the contrary.

The Dallas County Constable Sale was regularly conducted under Texas law. CCC has not alleged that the Dallas County Sale was improperly conducted and has never made an attempt to invalidate the Sale. Pronske was the successful bidder at the Dallas County Constable Sale for the property. He purchased the claim for $3,500. The proceeds of the sale were applied to the outstanding balance of the Judgment. Because of the bid price, a deficiency balance remained owing on the Judgment after application of the sales proceeds. On September 3, 2002, the Dallas County Constable issued a Bill of Sale to Pronske, selling various property, including the Claim.

Pronske presented the Bill of Sale to the Debtor's Chapter 7 bankruptcy trustee, Diane Reed (the "Trustee"). The Trustee recognized the Bill of Sale and remitted the distribution from the Claim to Pronske. Pronske did not file a notice of transfer of claim under Rule 3001(e)(2) prior to receiving the distribution from the Trustee. In fact, he did not file his Notice until April 25, 2003.

## Conclusions of Law

■ Pronske labeled his Notice a "provisional" notice because he argues that he was not required by Rule 3001(e) to file a notice of transfer of the CCC claim to him. He argues that because he obtained the Claim through state court turnover proceedings, the "transferor" of the Claim was not CCC, but the Dallas County Constable, and, therefore, Rule 3001(e) does not apply to him. However, in response to a letter by CCC's new counsel urging the position that a Rule 3001 notice of transfer of claim should have been filed by Pronske, he filed his "provisional" Notice "out of the abundance of caution, and to give CCC the opportunity to avail itself of whatever procedures are contained in Bankruptcy Rule 3001(e)(2), if applicable." (Notice, p. 3)

Rule 3001(e)(2) deals with the transfer of a claim "other than for security after the proof of claim has been filed." The definition of "transfer," which is defined in § 101(54) of the Bankruptcy Code to include "every mode, direct or indirect, absolute or conditional, *voluntary or involuntary*, of disposing of or parting with property or with an interest in property" (emphasis added), is sufficiently broad to encompass the kind of transfer that occurred in this case. *See, In re Infiltrator Systems, Inc.*, 251 B.R. 773, 776 (Bankr. D.Conn.2000)("Rule 3001(e)(4) applies to involuntary as well as voluntary transfers."); *NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n, Inc.)*, 164 B.R. 249, 256 (Bankr.D.Md.1993)("Bankruptcy Rule 3001 applies to substitution of claims by holders of judgments obtained against claimants in a bankruptcy case."). Here, Pronske purportedly obtained ownership of CCC's claim through state court turnover proceedings. Although the ownership of the Claim temporarily resided with the Dallas County Constable, it was

only for the purpose of conducting a sale of the Claim, the proceeds of which were to be applied to the amount owed to Pronske by CCC under the state court judgment. Essentially, Pronske alleges ownership of CCC's claim through the involuntary transfer that occurred through the state court turnover proceedings. Such a transfer falls within the application of Rule 3001(e)(2).

█ Once a notice of transfer is filed under Rule 3001, and a timely objection is filed, it is the responsibility of the Court to make a determination of whether the transfer of the claim is enforceable under nonbankruptcy law. *See,* 1991 Advisory Committee Note to Rule 3001(e); *Infiltrator Systems,* 251 B.R. at 776. In *Infiltrator Systems,* a judgment creditor of a claimant who had filed a proof of claim in the bankruptcy case moved for entry of an order effecting a transfer for security of the claimant's proof of claim. The court, after holding that Rule 3001(e)(4) would apply to the judgment creditor's attempts to have the claim transferred, simply looked to Connecticut law to determine whether the judgment creditor had a valid judgment lien that would support a transfer of the claim for security. The court found that the judgment creditor, the holder of a judgment obtained in Florida, did not have a valid judgment lien under Connecticut law because the judgment creditor did not follow the procedures for making its Florida judgment a judgment enforceable in Connecticut. Without a valid judgment lien under Connecticut law, the judgment creditor had no basis for claiming any interest in the claim filed by its judgment debtor in the bankruptcy case. The court, therefore, sustained the objection of the claimant to the judgment creditor's notice of transfer.

█ In this case, Pronske is a judgment creditor of CCC who bought CCC's Claim in a Dallas County Constable's sale conducted pursuant to the orders of the state court. Under the *Rooker/Feldman* doctrine, this Court may not exercise appellate jurisdiction over state court judgments and orders. *See, Verizon Maryland, Inc. v. Public Service Comm'n of Maryland,* 535 U.S. 635, 122 S.Ct. 1753, 1760, 152 L.Ed.2d 871 (2002); *U.S. v. Shepherd,* 23 F.3d 923, 924 (5th Cir.1994). Thus, this Court's review, under Rule 3001(e)(2), may not extend to the merits of the state court lawsuit or the turnover proceedings, but is limited to determining whether Pronske's claim of ownership to the Claim is, on its face, valid under Texas law.

█ The Texas Rules of Civil Procedure specify both the methods of service of process and the parties to whom notice of suit must be given. Pronske perfected valid service of process in accordance with Texas Rules of Civil Procedure and the Orders of the State Court in the Lawsuit. In fact, there is no dispute that CCC and Dan received service and were aware of the Lawsuit. After a defendant is served with the citation and petition, the plaintiff has no legal duty to notify the defendant before taking a default judgment on the causes of action asserted in the served petition. *See, Ponsart v. Citicorp Vendor Finance, Inc.,* 89 S.W.3d 285, 289 (Tex. App.2002). By service of citation and the accompanying petition, a defendant is charged with notice it has been sued and that a default judgment will be taken against it based on that cause of action if it fails to file an answer. *Id.* CCC received all the notice to which it was entitled when it was originally served with process.

Despite having been served appropriately under Texas law, CCC failed to file an answer. Pronske then obtained a default judgment against CCC on July 22, 2002. Pursuant to the Texas Civil Practice and

Remedies Code, Pronske obtained a Turnover Order from the state court that ordered that the Claim, among other things, be turned over to the Dallas County Constable "for sale under writ of execution, with the proceeds to by [sic] applied to the satisfaction of the Judgment." Because a turnover proceeding is an ex parte proceeding, service of a Motion for Turnover Order is not required under Texas law. *See, Sivley v. Sivley,* 972 S.W.2d 850 (Tex.App.1998)(Turnover statute does not specifically require notice to judgment debtor); *Thomas v. Thomas,* 917 S.W.2d 425, 433–34 (Tex.App.1996)(Failure to provide notice and hearing before issuance of turnover order does not violate due process). Thus, Pronske was not required to serve CCC with his Motion for Turnover of the Claim.

Furthermore, under Texas law, a cause of action or claim is a property right that can be subject to turnover. *See, Charles v. Tamez,* 878 S.W.2d 201, 205 (Tex.App. 1994). Although the Texas courts recognize that a court may not require a judgment debtor to turn over a cause of action if doing so would be against public policy, *see, id.,* neither CCC nor Dan has ever attempted to bring any action in state court to set aside the turnover order. By asking this Court to sustain its objection to Pronske's notice of transfer of the Claim, CCC is making a collateral attack on the judgment and order entered by the state court that ultimately resulted in Pronske's ownership of its Claim.

Under Texas law, a judgment that is "void" is subject to both direct and collateral attack, while a judgment that is "voidable" is subject only to direct attack and "must be corrected through ordinary appellate or other direct procedures." *Gober v. Terra+Corporation,* 100 F.3d 1195, 1202 (5th Cir.1996)(citing *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985)).

A "void" judgment, under Texas law, is "an absolute nullity and has no legal force or effect, while a voidable judgment is capable of being voided or confirmed." (Citations omitted). Thus, the state court judgment and turnover order are subject to attack in this Court only if the judgment or order was void under Texas law. A finding by this Court that any of the state court proceedings leading to Pronske's ownership of the Claim was void would not violate the dictates of the *Rooker/Feldman* doctrine because, as the Fifth Circuit stated in *Gauthier,* the *Rooker/Feldman* doctrine does not require a federal court "to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it." *Gauthier v. Continental Diving Services, Inc.,* 831 F.2d 559, 561 (5th Cir. 1987).

Thus, the Court must make a determination, in exercising its authority under Rule 3001(e), of whether the turnover proceeding was "void," as opposed to "voidable" under Texas law. If it was simply "voidable," it would not be subject to attack in this Court. The Fifth Circuit stated in *Gober* that

[a] judgment is void only when it is shown that the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or lacked capacity to act as a court. (Citing *Browning,* 698 S.W.2d at 363; *Cook v. Cameron,* 733 S.W.2d 137, 139 (Tex. 1987)). All errors other than jurisdictional defects render the judgment voidable rather than void and must be corrected on direct appeal.

*Gober,* 100 F.3d at 1202–03 (citing *Browning,* 698 S.W.2d at 363).

In this case, the state court had jurisdiction over both CCC and the subject matter when it rendered its judgment and issued

the order for turnover of the Claim. Any argument that the state court erroneously ordered turnover of the Claim because such turnover was against public policy would certainly fall under the category of "all errors other than jurisdictional defects [that] render the judgment voidable rather than void and [that] must be corrected on direct appeal." *Gober,* 100 F.3d at 1202–03. Having determined that the state court had jurisdiction over the person and the subject matter, this Court is without the power or jurisdiction to render any opinion as to the validity of the state court proceedings. Any arguments that CCC has that the state court proceedings resulting in Pronske's ownership of the Claim were invalid must be brought before the state court pursuant whatever remedies are available to it under Texas law.

Having found no basis for a determination that any of the state court proceedings leading to Pronske's ownership of the Claim were void, the Court finds, pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure, that Pronske's right to the Claim is valid and enforceable under Texas law. Pronske is thus entitled to receive 100% of the distributions made by the Trustee on account of the CCC claim.

 The Court rejects the arguments of CCC that Pronske misled the Trustee into paying the proceeds over to him. After Pronske received legal title to the Claim from the Dallas County Constable, Pronske presented the Bill of Sale to the Debtor's Chapter 7 bankruptcy trustee, Diane Reed (the "Trustee"). The Trustee recognized the Bill of Sale and remitted the distribution from the Claim to Pronske. Although CCC claims that Pronske misled the Trustee, CCC did not call the Trustee, a lawyer who appears in this Court regularly, as a witness in these proceedings. While Pronske should have

filed a notice of transfer of the claim prior to requesting payment from the Trustee, rather than after he had already received the distribution from the Trustee, the timing of the filing of this Notice does not affect the outcome. Pronske held legal title to the claim at the time that the distributions were made.

A separate order substituting Gerrit M. Pronske and Gerrit M. Pronske, P.C. for Clay Capital Corporation as the owner of the Claim will be entered contemporaneously herewith.

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT UNDER BANKRUPTCY RULE 9023, TO AMEND FINDINGS, FOR NEW HEARING AND RELATED RELIEF

On July 26, 2003, this Court conducted a hearing on the Provisional Notice of Transfer of Claim filed by Gerrit M. Pronske, P.C. and Gerrit M. Pronske ("Pronske"). After considering the evidence and the briefs of the parties, this Court entered a Memorandum Opinion and a separate Order Substituting Gerrit M. Pronske and Gerrit M. Pronske, P.C. for Clay Capital Corporation in which it ordered the substitution of Pronske for Clay Capital Corporation ("CCC") *nunc pro tunc* to September 3, 2002, as the claimant of the claim filed by CCC in this bankruptcy case on April 3, 1998. On August 1, 2003, CCC filed a Motion to Alter or Amend Judgment Under Bankruptcy Rule 9023, to Amend Findings, for New Hearing and Related Relief (the "Motion"). CCC asserted the following grounds for its Motion: 1) the Court should not have entered the Order nunc pro tunc, 2) certain of the findings, including those in footnote 1 of the Memorandum Opinion, should be altered, and the hearing reopened to admit evidence con-

tradicting the findings, 3) the Court should take notice of a Declaration of Robert Tobey, attached to the Motion, because such Declaration contradicts statements made at the June 26, 2003 hearing and findings contained in the Memorandum Opinion, and 4) the Court "should have found that the Trustee check was made payable to Mr. Pronske's trust account, rather than to Pronske, as the Memorandum Opinion states." CCC also requests this Court to stay the Order, reopen the record, and order the parties to mediation. Pronske filed a response on September 4, 2003.

■■■ CCC seeks relief under Rule 59 of the Federal Rules of Civil Procedure, which is incorporated herein by Rule 9023 of the Federal Rules of Bankruptcy Procedure. "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir.2003)(citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)(quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986))). The same grounds apply with respect to a motion for a new trial pursuant to Rule 59(a). *See*, Collier on Bankruptcy, ¶ 9023.01[2] (15th ed. rev.)(citing 12 Moore's Federal Practice, § 59.13[3][a](Matthew Bender 3d ed.)).

■■■ The bases for CCC's Motion include an allegation that the Court erred, as a matter of law, in issuing the Order *nunc pro tunc*. This Court, as a court of equity, has great latitude in granting *nunc pro tunc* relief. *See, In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1170 (5th Cir.1993). This is particularly true in this situation where the Court, in substituting

Pronske for CCC as the holder of the claim *nunc pro tunc* to September 3, 2002, was merely recognizing that legal title to the claim had passed from CCC to Pronske on that date. Therefore, CCC has not shown that this Court erred, as a matter law, when it applied the Order *nunc pro tunc*.

■■■ Two of the remaining grounds asserted by CCC in support of its Motion relate to the finding of this Court that "Tobey was not at any time counsel for CCC or for Dan in any fee dispute with Pronske . . . ." (Memorandum Opinion, at p. 5, n. 1). CCC asserts that this finding was erroneous and that this Court should take notice of the Declaration of Robert L. Tobey, attached to the Motion and should grant, in essence, a new "trial" on this issue to allow CCC to present evidence contradicting this Court's findings in its Memorandum Opinion. The Court rejects CCC's request for a new trial or to alter or amend the Order, first, and foremost, because, as the Court stated in its Memorandum Opinion, even though CCC claimed that Mr. Tobey should have been served with the original complaint in the state court litigation, service on a party's attorney of an original petition is not required under Texas law. Thus, even if Tobey had been counsel to CCC with respect to the fee dispute with Pronske, he was not required to be served to effect service on CCC and Dan.

■■■ As additional grounds for denying CCC's Motion with respect to this issue, CCC has not shown that this Court's findings were "manifestly erroneous," nor has CCC shown that the evidence it desires to present at a new trial meets the "newly discovered evidence" test announced by the Fifth Circuit. The Fifth Circuit has applied the following factors in determining whether newly discovered evi-

dence warrants a new trial: "(1) the probability that the evidence would have changed the outcome of the trial; (2) whether the evidence could have been discovered earlier through the moving party's due diligence; and (3) whether the evidence is merely cumulative or impeaching." *Advanced Display Systems, Inc. v. Kent State University,* 212 F.3d 1272, 1284 (Fed.Cir.2000) (citations omitted). The Court has already addressed the first prong: any new evidence that CCC could present regarding whether Tobey represented it in connection with the fee dispute with Pronske would not change the outcome of the hearing. Further, the "evidence," including Tobey's declaration, is not "newly discovered." CCC certainly was in possession of the facts concerning whether Tobey represented it in connection with the fee dispute at the time of the original hearing. CCC could have called Tobey as a witness or presented other evidence to establish this "fact," but chose not to do so.

CCC also asserts that this Court "should have found that the Trustee check was made payable to Mr. Pronske's trust account, rather than to Pronske, as the Memorandum Opinion states." The Motion mischaracterizes the Memorandum Opinion. The Court did not state that the check was "made payable" to Pronske. It simply stated that the distribution from the Claim was remitted to Pronske. This statement was true. In any event, because this Court found that Pronske was the legal holder of the Claim as of September 3, 2002, he was entitled to the distribution on the Claim at the time the Trustee remitted the funds. Thus, the outcome of the hearing would not have been affected by a finding that the check was payable to Pronske's trust account.

For these reasons, the Court denies CCC's motion for a new trial and to alter or amend this Court's Order entered on July 20, 2003.

CCC has also asked this Court to enter a stay and to order the parties to mediation. The Court will issue a stay for 10 days to allow CCC, should it so desire, to appeal and seek a stay from the United States District Court. The granting of the stay by this Court should not be construed by any party as a finding by this Court that CCC has shown a likelihood of success on the merits of any appeal.

**IT IS ORDERED** that the Motion to Alter or Amend Judgment Under Bankruptcy Rule 9023, to Amend Findings, for New Hearing and Related Relief filed by Clay Capital Corporation be, and hereby is, **DENIED**;

**IT IS FURTHER ORDERED** that Clay Capital Corporation's request for a stay of the July 20, 2003 Order Substituting Gerrit M. Pronske and Gerrit M. Pronske, P.C. for Clay Capital Corporation be, and hereby is, **GRANTED** prospectively from the date of the entry of this Order for ten (10) days to allow Clay Capital Corporation, should it so desire, to appeal and seek a stay from the United States District Court.